WIESMAN, Plaintiff, vs. AMERICAN INSURANCE COMPANY OF NEWARK, NEW JERSEY, and others, Defendants. [Two appeals.]

*May 9—October 14, 1924.*

*Insurance: Value of property destroyed: Overvaluation by insured: Fraud: False swearing: Degree of proof required: Discrepancy between value of property claimed and amount fixed by jury: Inconsistent answers: New trial.*

1. Findings of the jury that the insured complied with a condition of fire insurance policies as to the salvage of the property, and that there was no false swearing by the insured as to the value of the goods destroyed, are *held* to be sustained by the evidence. pp. 526, 529.
2. In an action to recover on a fire insurance policy the burden of proof rests on the defendant to establish the fraud and false swearing alleged in an overvaluation of the property burned. p. 530.

3. To establish such fraud it was competent to offer proof of overvaluation in the proofs of loss.   p. 530.

4. If there is any credible evidence which to a reasonable mind can support an inference in favor of a party, the question is for the jury, and the court cannot assume to answer it, either upon motion for nonsuit or direction of verdict, or by substituting other answers after the verdict is returned.   p. 530.

5. Mere overvaluation in proofs of loss is not conclusive that fraud has been committed.   It is necessary to go further and show that the misstatements were made knowingly and with intent to deceive the insurer concerning some matter material to the insurance.   p. 530.

6. Where the answers of the jury in a special verdict are manifestly too inconsistent or contradictory to support a judgment, a new trial should be granted.   p. 531.

7. A finding of the jury that plaintiff's loss on his stock of merchandise was $30,500 was not necessarily inconsistent with a finding that plaintiff did not intentionally swear falsely in making his proofs of loss, wherein he claimed $62,000, and the court erred in granting a new trial for inconsistency in such answers.   p. 534.

8. Large discrepancies between the amount claimed in proofs of loss and the amount fixed by the verdict do not, as a matter of law, establish fraud on the part of the insured.   p. 533.

APPEALS from an order of the circuit court for Oneida county: A. H. REID, Circuit Judge. *Reversed.*

This is an action brought against numerous fire insurance companies on different policies of fire insurance. Plaintiff owned a stock of merchandise located in a rented store at Rhinelander, Wisconsin. The defendant companies had issued insurance policies amounting to $55,000 on merchandise and fixtures. On the night of January 18, 1923, a fire destroyed the store and burned and damaged by water the merchandise and fixtures.

The plaintiff claimed that there was practically a total loss. This was not conceded by defendants. Plaintiff made proofs of loss in due time and brought suit. Defendants answered in substance that plaintiff set or caused the fire to be set with intent to defraud; that he made false and fraudulent statements as to the value of the property de-

stroyed; that he swore falsely on an examination which had been held under the terms of the policy; that during and after the fire he deliberately violated provisions of the policies by neglecting to care for and protect from damage property not damaged or only partly damaged; that he refused to make an inventory of the property; and that he permitted and encouraged numerous persons to carry away large quantities of the merchandise after the fire.

There was a special verdict in which all of these subjects were carefully submitted to the jury. There were eight questions, but four of the questions contained subheads submitting such issues as alleged false statements as to the loss of books, the volume of business, the purchases, the sales, the bank deposits, increase in market values in different years, and the amount of damage upon the merchandise and the furniture and fixtures.

The answers to all of the questions relating to fraud were in favor of the plaintiff. They found the value of the stock of merchandise to be $30,500 and the fixtures and furniture $10,000. In his opinion the trial judge stated that if the sole question for the jury had been to determine the amount of the loss, the answer of the jury would have been sustained by the evidence, and if the sole question had been to determine whether the plaintiff had intentionally sworn falsely in making his proofs of loss, the court would be obliged to say that the answer of the jury was sustained.

The court reached the same conclusion as to the issues whether the plaintiff set the fire or whether he failed to comply with the requirements of the policies as to the salvage of the property. The court concluded, however, that the finding of the jury that the plaintiff's loss on his merchandise was $30,500 could not stand with the other finding that he did not intentionally swear falsely in making his proofs of loss. On this ground, that two of the answers were inconsistent, a new trial was ordered. The ordinary

motions were made by the parties, and both plaintiff and defendants appealed.

Other facts will be stated in the opinion.

For the plaintiff there were briefs by *Bird, Okoneski & Puchner* of Wausau and *H. F. Steele* of Rhinelander, and oral argument by *Mr. Steele.*

For the defendants there was a brief by *Martin, Martin, Martin, Clifford & McHale* of Green Bay and *E. D. Minahan* of Rhinelander, and oral argument by *Mr. Minahan* and *Mr. G. F. Clifford.*

The following opinion was filed June 3, 1924:

JONES, J.    The record contains a large amount of testimony and many exhibits, but in view of the answers of the jury, sustained by the court, the issues are much simplified, and it will serve no useful purpose to state in detail the testimony given at the trial.

Defendants claim that the undisputed evidence shows that they were entitled to a verdict on the ground of the frauds committed by the plaintiff. No claim is made that there was sufficient evidence to sustain their defense that the fire was set or procured to be set by plaintiff.

Plaintiff claims that there was abundant testimony to sustain the finding of the jury and that the verdict should have been for a much larger amount.

The first contention of the defendants relates to their claim that the plaintiff failed to comply with the condition of the policies as to the salvage of the property. On this point numerous witnesses were called who gave testimony tending to show that for about a week after the fire many people, children and adults, gathered about the ruins and were engaged in taking away such articles as gloves, clothing of various kinds, umbrellas, bolts of cloth, and the like; that some of these goods were damaged and some of them appeared not damaged. There was testimony tending to show that the plaintiff knew of these facts and appeared to be

indifferent. Considerable testimony was given as to a quantity of goods taken by one Holewinski and of the attempts of the plaintiff to recover money from him to an amount greater than their value, and in such a manner as might operate to the prejudice of the defendants.

On the other hand, testimony in behalf of plaintiff showed that the building was wholly destroyed, only portions of the brick outer walls remaining upright; that portions of the building had fallen into the basement, which had been flooded until the water ran out of the windows; that upon the direction of plaintiff watchmen were employed and the premises were guarded by police; and there was testimony tending to show that it was practically impossible to prevent people from gathering about the premises and taking away various articles; that after the fire certain merchandise which seemed to be of value was gathered up on the plaintiff's direction, taken away and cared for, but afterwards sold for an amount which no more than paid for the expenses; that when plaintiff's attention was called to the fact that Holewinski had taken goods, plaintiff procured a search warrant and secured the goods, but that they proved to be of no merchantable value above the cost necessary to their preservation and cleaning. It cannot be said that on this issue there was no credible evidence to sustain the finding of the jury.

On the question of false swearing as to values the testimony took a very wide range. The plaintiff was examined and re-examined again and again concerning his modes of business in 1921 and 1922; as to the amount of purchases and sales; his bank deposits; his modes of bookkeeping and his inventories. The inventories of 1921 and 1922 reached not far from $41,000.

Defendant's counsel lay great stress upon the fact that, although his merchandise and fixtures were assessed in 1922 at $30,000, he appeared before the board of review and gave testimony to the effect that $25,000 would be a just assess-

ment, and it was reduced by the board to $28,000. It appeared that his bank deposits were much less in 1922 than in 1921. It is argued that his proof of loss, claiming $77,796, being $62,730 on merchandise and $15,066 on fixtures, is a demonstration that he made a claim for $37,296 more than his loss as fixed by the jury at $40,500.

Evidence of plaintiff tended to show that in 1921 he employed the firm of T. E. Brennan & Company of Milwaukee to look after his insurance. This company represented many of the leading companies in Rhinelander, and its secretary, Mr. Hoff, acted as adjuster in making the proof of loss.

There was testimony on behalf of the plaintiff to the effect that the inventory of January 1, 1922, was on a falling market. The goods in the men's department were in charge of Mr. Byrne, and were personally inventoried and valued by him, and this valuation was $15,959.34, as shown by the inventory of January 1, 1923. In former inventories fixtures had been inventoried at a lump sum, but in that year were inventoried in detail, on the advice of a representative of certain insurance companies, at the sum above stated. In the other departments, which were supposed to contain much more merchandise than the men's department, the lists were made up by the several clerks and were tabulated by the bookkeeper and the plaintiff. The clerks testified that the lists contained only goods which were in stock and merchantable and that remnants and odds and ends were omitted.

There was testimony, although there was conflict on this subject, that the last inventory was made on a rising market. In explanation of his statements made before the board of review, plaintiff testified that on comparing with other assessments he found that others having large stocks were not assessed in the same proportion that he was, and that if he was forced to sell his stock at that time he did not believe that he could get more than $25,000.

Most of the books of the plaintiff had been destroyed by the fire. Mr. Hoff, who was intrusted with the details of making the proofs of loss, had a copy of plaintiff's income tax return for 1922. With this and the inventory of 1923 as a basis he took account as far as possible of the purchases and sales from January 1 to 18, 1923. The inventory books and income-tax returns were furnished the defendants and they were given authority to have access to the banking records.

It appeared that some money had been received from the outside which had gone into the bank deposits of 1921; and there were loans and renewals not appearing as deposits in 1922. As compared with the bank deposits, plaintiff admitted that he had made considerable mistakes in his estimates of the sales and purchases for 1922. We have given only a very brief summary of the large amount of testimony which was received on this issue as to the alleged false and fraudulent testimony concerning the value of the goods destroyed. Since there was so little documentary evidence showing the details of the business during several years, it was evidently a very difficult matter to arrive at the truth on this issue.

There was some testimony offered by defendants for the purpose of showing that plaintiff had made false statements concerning the preservation and concealment of books and as to the origin and cause of the fire. The answers of the jury on questions relating to these subjects were also in favor of plaintiff and it seems unnecessary to detail the evidence.

In this case there was undoubtedly such testimony that the jury might have reached a different conclusion on the questions of fraud presented. In such an event neither the trial court nor this court would have been justified in disregarding their findings. It seems plain to us that it cannot be said that there was no credible evidence to sustain the answers of the jury on the issue of fraud.

It is unnecessary to cite authority for the undoubted rule that the burden of proof rested on the defendants to establish the fraud alleged. As part of the evidence to establish fraud and false swearing it was competent to offer proof of overvaluation in the proofs of loss, and there is some authority for the proposition that the overvaluation may be so grossly exaggerated as to raise the presumption of fraud.

But it is equally well settled that in cases like the one now before us the question of fraud is one for the consideration of the jury, and the general rule applies that "if there is any credible evidence which to a reasonable mind can support an inference in favor of a party, the question is for the jury, and the court cannot assume to answer it, either upon motion for nonsuit or direction of verdict, or by substituting other answers after the verdict is returned. At that stage the court has nothing to do with the question of preponderance of fairly conflicting evidence" (citing cases). *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 141, 88 N. W. 57.

The authorities are generally agreed that a mere overvaluation in proofs of loss is not conclusive that fraud has been committed. It is necessary to go further and show that the misstatements were made knowingly and with the intent to deceive the insurer concerning some matter material to the insurance. *Dogge v. Northwestern Nat. Ins. Co.* 49 Wis. 501, 504, 5 N. W. 889; *Vergeront v. German Ins. Co.* 86 Wis. 425, 56 N. W. 1096; *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 88 N. W. 57; 5 Joyce, Ins. (2d ed.) § 3341.

As already stated, the trial court saw no reason for setting aside any of the answers of the jury on the questions of fraud, and we cannot say that those answers are unsupported by credible evidence. It follows that the claim of defendants that judgment should have been in their favor is not sustained.

The question is therefore presented whether a new trial

was properly granted on the ground that two of the answers were deemed inconsistent. It is undoubtedly the rule that, where answers of the jury in a special verdict are manifestly too inconsistent or contradictory to support a judgment, a new trial should be granted. The rule has been most frequently applied by this court in negligence cases, but it is by no means confined to that class of cases. The following extract from the opinion of the trial judge states the process by which he reached his conclusion that there must be a new trial:          •

"The finding of the jury that the plaintiff's loss on his stock of merchandise was $30,500 cannot stand up together with the other finding that the plaintiff did not intentionally swear falsely in making his proofs of loss. Plaintiff had, and presented as the basis of making his proofs of loss, a complete itemized inventory of his stock of goods finished less than two weeks before the fire. He testified that this was taken at cost or market value, whichever was lower. When presented it showed a total of over $62,000. That inventory was deliberately made. It cannot be claimed that the plaintiff was greatly mistaken about its contents or its accuracy. There was no material amount of goods salvaged from the fire. But the jury have found that the loss was only $30,500 on the goods. If the goods that were in the fire and destroyed or damaged were not of a value materially exceeding $30,500, then the plaintiff, when he made his inventory showing a total stock of over $62,000, must have knowingly falsified his inventory.

"If, on the other hand, his inventory was a good-faith, honest effort to arrive at the true value of the goods, the finding of the jury is manifestly wrong. The answers to the fourth and seventh questions cannot stand together."

This conclusion rests on the theory that the jury could not, under the testimony, believe that the plaintiff was honestly mistaken as to the contents or accuracy of the inventory.

During a long trial the accuracy of this inventory was vigorously attacked by counsel for defendants. The ques-

tion of rising and falling markets during the different years involved was before the jury.    There was testimony that not only the cost and market but also replacement values were considered in making the inventory in question.    As already stated, the amounts of purchases and sales and the income-tax reports and bank deposits for several years were brought before the jury at the instance of the defendants. Defendants' counsel also urged on the court and jury that the testimony given by plaintiff before the board of review demonstrated that his statements in the proofs of loss and the inventory were knowingly false.    Although the proofs of loss were submitted to plaintiff before they were served, they were made by a third person from such data as had been saved from the fire.

On all this mass of testimony, were the jury forced to the alternative of finding either that the inventory was substantially correct or that plaintiff was guilty of intentional false swearing?    We do not think so.    They may have given much weight to the statements of plaintiff before the board of review in reference to his assessment in arriving at their conclusion as to the real value of the merchandise.    That conduct was subject to some criticism, and yet plaintiff is far from being the only offender who has sought by improper means to escape the burden of taxation.    Although the proper authorities have their remedies where tax evasions are attempted, statements made by a taxpayer as to the amount of his taxable property are not conclusive against him in actions between him and third parties.    This would be manifestly unjust in actions on insurance policies where such statements are used for the purpose of securing forfeitures under highly penal provisions of the policies on which actions are brought.

In our opinion it was possible for the jury to make their finding based on the evidence that the plaintiff committed no fraud in respect to the proofs of loss and at the same time to find that the merchandise burned was far less val-

uable than the amount claimed.   In considering this subject it must be borne in mind that in determining the amount of the loss and the question of fraud two different degrees of proof had to be observed.   The jury was properly instructed in substance that in ascertaining the amount of the direct loss and damage they should find the amount which had been proven by the evidence *"to a reasonable certainty."* The jury may have believed that the methods of making the inventory criticised by defendants' counsel were erroneous, and that although the merchandise burned may have been greater than $30,500 they could not so find with reasonable certainty.

When defendants' counsel undertook to prove that plaintiff had perpetrated a gross fraud they assumed a heavier burden of proof.   It is the rule well settled in this state that the party making the charge of fraud must prove it by *clear and satisfactory evidence.*   Accordingly the court instructed the jury as to the questions relating to fraud that "the burden of proof is upon the defendants to show by the greater weight of the evidence, and clear and satisfactory evidence, to a reasonable certainty."   We do not think that it could be declared as a matter of law that the jury disregarded either of these instructions.   The jury found the value of the merchandise damaged or destroyed at less than one half the valuation claimed in the proofs of loss.   This is undoubtedly a large discrepancy.   But according to the overwhelming weight of authority such differences between the amounts claimed in the proofs of loss and the verdict do not, as a matter of law, establish fraud.

In *Commercial Ins. Co. v. Friedlander,* 156 Ill. 595, 41 N. E. 183, the amount stated in the proofs of loss was more than seven times the amount of the verdict, and the court said (p. 598):

"The mere fact that the assured, in the proofs of loss, has made an overvaluation of the property destroyed, will not defeat a recovery on the policy for the actual loss sus-

tained.    If the assured, in making proofs of loss, acts in
good faith, in the honest belief that the property destroyed
was worth the amount of the valuation placed upon it, and
the excessive valuation was not intended to deceive or de-
fraud the insurance company, such overvaluation cannot be
held to be fraudulent, and it will not defeat a recovery
(citing cases).    There are numerous cases found in the
books where the recovery has been sustained, although
much less than the amount of loss as the same was estimated
in the proofs of loss."

In other cases cited below the same rule was declared
where the discrepancies varied in amount.    In some of these
cases the objection was raised, as here, that there should be
a new trial on account of inconsistency in the verdict, and
overruled.    *Goldstein v. St. Paul F. & M. Ins. Co.* 124
Iowa, 143, 99 N. W. 696; *Obersteller v. Commercial Assur.
Co.* 96 Cal. 645, 31 Pac. 587; *Citizens F. & M. Ins. Co. v.
Short,* 62 Ind. 316; *Stone v. Hawkeye Ins. Co.* 68 Iowa,
737, 28 N. W. 47; *Dogge v. Northwestern Nat. Ins. Co.* 49
Wis. 501, 5 N. W. 889; *Mack & Co. v. Lancashire Ins. Co.*
4 Fed. 59; *Gerhauser v. North B. & M. Ins. Co.* 7 Nev. 174;
*Wolf v. Goodhue F. Ins. Co.* 43 Barb. 400, affirmed in 41
N. Y. 620; *Clark v. Phœnix Ins. Co.* 36 Cal. 168; *Williams
v. Phœnix F. Ins. Co.* 61 Me. 67.    Many other cases holding
the general rule above stated are cited in 32 L. R. A. N. s.
453.

The order for a new trial was not a discretionary order,
but was based on what we regard as an erroneous view of
the law.

It is our conclusion that there was no such inconsistency
between the answers to the fourth and seventh questions as
required a new trial, and that judgment should be entered
for the plaintiff for the amount as fixed by the verdict, with
interest.

*By the Court.*—The order granting a new trial is re-
versed, and the cause is remanded for further proceedings
in accordance with this opinion.

The following opinion was filed October 14, 1924:

PER CURIAM. A motion was made by the plaintiff's counsel to amend the mandate and opinion of the court so as to permit an additional amount of $1,850, said to be the value of certain patterns, to be included in the judgment. It is considered that this amount was included in one of the answers by the jury, and in the judgment.

The motion is denied without costs to either party.