JUNEAU STORE COMPANY, Respondent, vs. BADGER MUTUAL FIRE INSURANCE COMPANY and another, Appellants.

*October 12—November 6, 1934.*

344

For the appellants there were briefs by *Grady, Farnsworth & Walker* of Portage, and oral argument by *Walter H. Farnsworth* and *Daniel H. Grady.*

For the respondent there was a brief by *Loomis & Roswell* of Mauston and *Rubin & Zabel* of Milwaukee, attorneys, and *W. B. Rubin* of counsel, and oral argument by *W. B. Rubin* and *O. S. Loomis*.

FAIRCHILD, J.    The assignment of error based on the refusal of the trial court to change answers to questions in the special verdict so as to find that respondent wilfully submitted false inventory and invoices, and that its officers wilfully testified falsely in examinations before trial relating to matters material to the loss, must be decided against appellants.    The assignment relates to issues of fact and is controlled by the rule that answers of the jury, sustained by competent evidence, cannot be disturbed.    A verdict approved by the trial court must be upheld on appeal if there is any credible evidence to support it.    *Sharkey v. Shurman,* 170 Wis. 350, 174 N. W. 912.

Under the stipulations and conditions of the standard fire insurance policy of this state an entire policy becomes void if the insured, with intent to deceive, has concealed or misrepresented any material fact or circumstance increasing the risk or contributing to the loss, or if he has practiced any fraud or false swearing touching any matter relating to the insurance or subject thereof either before or after the loss. Sec. 203.01, Stats.    The respondent claimed the total destruction of its books and records except an inventory made early in January of 1933.    Duplicate invoices were demanded by the appellants, and among those furnished by the Portage Wholesale Company were fifteen, the genuineness of which were questioned.    It may be said that, while the books of the Portage Wholesale Company and the questioned invoices because of erasures and substitutions and additions on their faces arouse suspicions, still, with the explanations of bookkeeping methods and practices existing in that firm as testified

to by the bookkeeper and others connected with the transactions, the dispute is placed in the territory over which the discretion and judgment of the jury may properly be exercised. Because of the conclusions reached, it is unnecessary to proceed with an analysis of the testimony tending to show the relevancy of the acts of the Portage Wholesale Company to this controversy, or the connection of the management of the respondent with the management of the Portage Wholesale Company.

The existence of the inventory showing stock on hand to the extent and of the amount found by the jury is surely sustained by the evidence, and its integrity, under the evidence submitted at the trial, was a matter for the jury to pass upon. The record contains many exhibits and considerable interesting testimony calling for careful scrutiny, but in view of the conflict of evidence, the answers of the jury, and the approval of those answers by the learned trial judge, we must treat as final the findings of fact as there made.

Our attention is called to a statement made by one of the attorneys for respondent when he was addressing the jury at the beginning of the summing up of the case:

"Penner sits at the counsel table when he ought to be in the back part of the room, and another thing, he was a son-in-law of a president of one of these insurance companies getting $100,000 a year salary."

The reference is to one who had been a witness upon the trial. Had this remark been permitted to go unchallenged so that the jury in its deliberation upon the case might consider it as a statement of fact, certainly a very serious question would arise as to the fairness of the trial and the validity of the jury's answer to questions as to which such witness' testimony was material. The court promptly checked counsel and instructed the jury to give no consideration to that statement. The counsel, at the time, was referring to a well-

known accountant of recognized standing and ability. The evidence at the trial showed him to have had upwards of twenty-five years' experience as a certified accountant, and to have been employed by appellants to examine the accounts and inventories involved in this case. The statement was so far from being based upon any fact appearing in the record that it is difficult to conclude that it had any effect when challenged, and must have passed out of the minds of the jury as a bit of fantastic and empty exaggeration. The matter does not appear to have been treated at the time when motions after verdict were considered. It was not contained in the specifications of reasons for granting a new trial addressed to the trial court. The statement, although contrary to fact and on the record not to be justified, was not, under the circumstances, sufficiently prejudicial to warrant the granting of a new trial. *Lehner v. Chicago, M., St. P. & P. R. Co.* 204 Wis. 558, 236 N. W. 572; *Standard Accident Ins. Co. v. Runquist,* 209 Wis. 97, 244 N. W. 757.

The objection to the court's instruction to the jury with reference to the burden of proof being upon the appellants to establish that the respondent wilfully and intentionally submitted to the appellants false invoices and inventory falsely representing the amount of merchandise on hand, and as to other and similar questions, cannot be sustained. There were, under the pleadings, two fundamental controversies: First, the claim of the respondent that it had suffered a loss for which it was entitled to be paid because of insurance against that loss issued by appellants. The appellants, for the purpose of the argument at least, concede that when respondent offered acceptable testimony as to the actual extent of its loss and the fulfilment of the conditions in the policy of insurance, a *prima facie* case was made. The second of the fundamental controversies arises from the claim that although the loss occurred, the respondent cannot recover be-

cause of wilfully false and fraudulent acts and deceits practiced in its representations. As to this second phase of this case, the learned trial judge said in substance, that even if there were an overvaluation of the stock of merchandise, if the insured acted in good faith, in the honest belief that the property destroyed was worth the amount of the valuation placed upon it, and did not intend it to deceive or defraud the insurance companies, it was entitled to a finding that such overvaluation was not fraudulent. He instructed the jury that "the proof must go further and satisfy . . . by a clear and satisfactory preponderance of the evidence, that in making such overvaluation and in submitting sworn proof of it to the insurance companies, the plaintiff insured intended to deceive or defraud the insurance companies." He also told the jury, in connection with the quoted instructions, that the intentional falsification of books, records, invoices, or proof of loss, so as to show a greater amount of property on hand than existed, was fraudulent and would sustain a finding of fraud. Thus the facts may show an overvaluation by the insured, or the insured may admit it but deny any intention to defraud; the insurers then have the responsibility of meeting the requirements of the burden of proof to show the wilfulness and fraudulent character of such overvaluation. As a practical matter, it must be evident that the finding of the jury in this case that the goods on hand and destroyed about equaled the amount claimed to exist and to be covered by the inventory, would be accompanied by a finding that there was no fraudulent manipulation of books or invoices for the purpose of deceiving the insurers. Appellants' argument in support of their contention that the burden of proof did not rest upon them to show fraud, overlooks the fact that when they undertook to prove that respondent had perpetrated a gross fraud, they were facing a presumption in favor of truth and against falsity and fraud and to meet it successfully they

must establish a fraud, a fact with the characteristics of wilfulness and intent. If a wilful fraud had occurred it would of course destroy respondent's right to recover. But overvaluation is simply presumptive evidence of fraududent intent strong in proportion to the excess, and unless there exists, as said by the trial court, an intent to deceive or defraud the insurance company, such overvaluation is not fraudulent.

The assured is required to prove the amount of his loss and in doing so must to some extent dispel the idea of fraud. If the assured, in making proof of loss, acts in good faith in the honest belief that the property destroyed was worth the amount of the valuation placed upon it, and an excess is found by the jury to exist, but that the excessive valuation was not intended to deceive or defraud the insurance company, recovery by the insured would not be defeated. The instructions appear to be within the rules discussed and approved in *Wolters v. Western Assurance Co.* 95 Wis. 265, 70 N. W. 62; *Wiesman v. American Ins. Co.* 184 Wis. 523, 199 N. W. 55, 200 N. W. 304; and *Kobin v. St. Paul F. & M. Ins. Co.* 150 Wis. 591, 137 N. W. 753. We have examined the record with reference to all exceptions taken and all rulings complained of, and find no errors which may be said to be prejudicial and to warrant the granting of a new trial.

*By the Court.*—Judgment affirmed.