WALLIN, Respondent, vs. SUTHERLAND, Appellant.

*January 14—February 17, 1948.*

150

*F. D. Shuttleworth* and *William Ryan,* both of Madison, for the appellant.

For the respondent there was a brief by *Curkeet & Curkeet* of Madison, and oral argument by *William R. Curkeet* and *William R. Curkeet, Jr.*

BARLOW, J.   The questions presented on appeal are: (1) Is there evidence in the record sufficient to support the answer of the jury that the plaintiff, Cecelia Wallin, had no knowledge prior to September, 1942, that Carl F. Sutherland was a married man?   And (2) Are the damages excessive?   This requires an examination of the evidence.

Cecelia Wallin, plaintiff and respondent, and Carl F. Sutherland, defendant and appellant, started corresponding in June, 1932, as the result of respondent's name being published in a magazine carrying the names of persons who were lonesome and desired to carry on correspondence.   This correspondence continued until September, 1933, during which time appellant wrote more than fifty letters to respondent, and she replied to each of them.   They first met at Madison, Wisconsin, in December, 1932, and during the year 1933 appellant visited respondent twice at her place of employment near Chicago.   In September, 1933, respondent came to Madison, was met by appellant, and they immediately started living together and

continued to live together from that time until September, 1942, when she left.

Appellant was married in Pittsburgh, Pennsylvania, in 1926, and continued to live there with his wife until 1929, when they separated. He testified that at the time of the separation his wife agreed to get a divorce. Appellant came to Wisconsin in the summer of 1932 and was an experienced motor mechanic. During the fall of that year he started in business in the city of Madison under the trade name of "Electric Motor Service" which he still carried on at the time of the trial. When respondent came to Madison in September, 1933, she immediately went to work in this place of business, working long hours and performing services of every kind. She was frequently referred to as his wife, and took a keen interest in the success of the business. The alleged breach of promise occurred on September 7, 1942, and on September 25, 1942, appellant and respondent went to a law office where they had an agreement prepared which was designated a "dissolution of partnership" and in which appellant agreed to pay and did pay respondent the sum of $5,000 in accordance with the terms of the agreement. No reference to the breach of promise was made in this agreement. Thereafter respondent left Madison, and this action was not commenced until January, 1947.

On this appeal appellant does not question the finding of the jury that he had promised to marry respondent, but contends that respondent knew he was a married man and unable to marry her as early as 1933, and that she knew it at all times thereafter. To support this contention he claims he informed her in his correspondence that he was a married man and he also told her so after they met. Mrs. John Erickson testified she had two conversations with respondent in 1933 and informed her that Sutherland was a married man and expressed her disapproval of respondent's living with him under the existing conditions. Her husband testified he was present during one of those conversations. The Ericksons were

friends of appellant and he had lived in their home. Another witness testified he was present in 1939 and again in 1940 when appellant informed respondent he was a married man. One witness testified to a conversation had directly with respondent in 1940 in which respondent stated she thought appellant had gone to Pennsylvania to see his wife. Appellant admitted that shortly after he and his wife separated he received a copy of some papers from a court in Pittsburgh and thereafter he did not know whether he was a married man or not. His wife had agreed to obtain a divorce and he had not investigated the records to find out whether a divorce had been granted. When questioned why he did not tell respondent the facts as he knew them he said he felt it was her duty to ask him about it.

Respondent denied she had the conversations testified to by witnesses for the appellant. In his correspondence with her appellant many times urged respondent to have confidence in him, and she testified she did have confidence in him at all times and believed him to be a free man and in a position to marry her.

Appellant argues that the testimony of respondent, a single witness and party in interest, cannot be accepted as sufficient to sustain the answer of the jury as against the testimony of four disinterested witnesses, and that appellant's testimony as to respondent's knowledge that appellant was a married man is so overwhelming that no question of fact was left for submission to the jury. The verdict was approved by the trial court and must be sustained if there is credible evidence to support it. *Juneau Store Co. v. Badger Mut. F. Ins. Co.* (1934) 216 Wis. 342, 257 N. W. 144; *Collins v. Janesville* (1903), 117 Wis. 415, 423, 94 N. W. 309; *Hein v. Huber* (1934), 214 Wis. 230, 233, 252 N. W. 692.

Respondent was ready and willing to marry appellant at all times and it is only natural she should have had trust and confidence in him. The letters written by him to her speak for themselves. He urged her to have confidence in him, stated

he was a free man, and there is abundant evidence that he promised to marry her. He now comes into court and says she should not have believed him but should have believed disinterested persons who claimed he was a married man. Respondent had a right to rely on positive and repeated statements of appellant that he was a free man and in a position to marry her, and she was not required to investigate the records in Pennsylvania to determine whether this was true. *Blossom v. Barrett,* 37 N. Y. 434. There is testimony that it was only about a month before respondent left appellant that he expressed any doubt as to whether he was legally divorced. The jury had a right to believe there was no doubt in his mind prior to that time, and if it so believed it could wholly disregard the testimony of appellant's other witnesses. In *Estate of Fox* (1922), 178 Wis. 369, 371, 190 N. W. 90, Fox was married and procured a divorce from bed and board, and married another woman who lived in the same county, giving her a copy of the limited divorce judgment, which she retained in her possession. The real wife testified she told claimant that she had no right to live with Fox and that it was bigamy; that there was no divorce and that they were living in adultery. Other witnesses corroborated the testimony of the real wife. The jury found that claimant had no knowledge that Fox was not divorced. On appeal this court held:

"The claim that plaintiff was informed that she lived in adultery with Mr. Fox rests upon conflicting testimony, and we cannot disturb the jury's conclusion as to where the truth lies."

We conclude there is evidence in the record sufficient to support the answer of the jury that respondent had no knowledge prior to September, 1942, that appellant was a married man.

Appellant further contends respondent testified that in 1941 she had knowledge that appellant was a married man. On her adverse examination there was testimony that might pos-

sibly be construed that she had this knowledge, but at the time of trial she testified it was about a month prior to the time she left him that appellant expressed some doubt as to whether he was divorced. If there is any inconsistency between plaintiff's testimony on her adverse examination and what she said at the trial it was the province of the jury to decide which was correct. *Parish v. Awschu Properties, Inc.* (1945) 247 Wis. 166, 174, 19 N. W. (2d) 276.

On the question of damages the jury was properly instructed as to elements to be considered. Respondent offered proof that appellant was worth about $80,000 at the time of the trial, and appellant claimed his net worth was about $65,000, most of which was earned after respondent left him. At the time of the alleged breach of contract respondent was about 32 years of age and appellant 43 years of age. The benefits and advantages which the marriage would have given her by way of a permanent home and the right to share as his wife in his property, his earning capacity and situation in life, meant material security to the respondent. In *Klitzke v. Davis* (1920), 172 Wis. 425, 430, 179 N. W. 586, where plaintiff was awarded $6,500 damages for breach of promise to marry, this court said:

" . . . It is well settled that in this class of cases the amount of damages is a subject peculiarly in the province of the jury. On the motion for a new trial the circuit judge declined to reduce the verdict. We cannot say . . . that the discretion of the circuit judge . . . was not properly exercised."

It is argued that the so-called partnership settlement made between the parties in 1942 was intended to be in full settlement of all differences between them at that time. There is nothing in the settlement agreement to so indicate, and we cannot read into the contract that which it does not provide.

While the conduct of the parties over a period of years cannot be approved by any court, nevertheless appellant was a

willing party to it as well as respondent.    This is an action at law for damages for breach of contract to marry.    It was for the jury to determine the value of the benefits and advantages lost to respondent by reason of appellant's refusal to carry out this contract under all the facts in the case.    We conclude the damages are not excessive.

We have examined other questions raised by appellant in his brief and conclude they are without merit.

*By the Court.*—Judgment affirmed.