Woodward, Respondent, vs. Vegetable Packing House, Inc., Appellant.

*May 5—June 3, 1958.*

For the appellant there was a brief by *Schmidt & Thibodeau,* attorneys, and *Leon S. Schmidt, Gregory P. Thibodeau,* and *M. S. King* of counsel, all of Wisconsin Rapids, and oral argument by *Leon S. Schmidt.*

For the respondent there was a brief and oral argument by *Charles F. Jensen* of Stevens Point.

CURRIE, J.   The issue on this appeal is whether there is credible evidence to sustain the verdict of the jury.  In passing upon this issue it is only necessary to consider such testimony and exhibits which sustain the verdict.  *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 109, 62 N. W. (2d) 549, and *Sturm v. Simpson's Garment Co.* (1956), 271 Wis. 587, 590, 74 N. W. (2d) 137.

The plaintiff Woodward resides at the village of Plainfield and is engaged in farming and the produce business.  About April 10, 1956, he was contacted by one Arthur Gatzke and entered into a verbal agreement with the latter.  Under such contract Woodward was to grow 200 acres of sweet corn for Gatzke's principal during the 1956 season for which Woodward was to receive a guaranteed net price of not less than sixty cents per sack, each sack to contain five dozen ears.  It was a further part of the agreement that Gatzke's principal was to pick the corn and haul it to the shipping point.  Gatzke's principal was to furnish the seed corn but Woodward was to be charged with the cost thereof, the same being forty-one cents per pound.  Woodward was also to be advanced funds with which to purchase fertilizer to be used in producing the corn.

At the time such agreement was made, Gatzke was employed by the Robert L. Berner Company of Chicago but his services were also loaned by such company to the defendant Vegetable Packing House, Inc.   Gatzke told Woodward that he represented both of these corporations but that he did not know which he would "operate under" in handling the growing of the corn contracted for in the Plainfield area.   However, Gatzke further stated he "would either run it [the contract for growing sweet corn] through the Robert L. Berner Company or the Vegetable Packing

House, Inc." Both corporations had the same officers. Woodward knew that Robert L. Berner operated under both corporate entities, and telephoned Berner at Chicago who assured Woodward that any deal that Woodward made with Gatzke would be carried out "100 per cent."

Shortly after June 1, 1956, Woodward received from Vegetable Packing House, Inc., a check in the sum of $3,300 dated June 1, 1956, bearing the following indorsement: "Indorser accepts this check as a loan from Vegetable Packing House, Inc., and agrees to pay same, interest free, on or before Oct. 1st, 1956. Indorser further agrees that this money is to be used exclusively toward purchase of fertilizer." Woodward indorsed and cashed this check. Vegetable Packing House, Inc., also supplied Woodward with sufficient seed corn to plant the 200 acres.

Woodward also verbally leased a warehouse owned by him in Plainfield to Gatzke for use in connection with Vegetable Packing House, Inc.'s activities. A portion of such building was remodeled into an office and other changes were made in the building to fit it for use by the lessee. Part of such costs were paid by Woodward and part by Vegetable Packing House, Inc. Woodward testified that the agreed rental to be paid him was $600 if Vegetable Packing House, Inc., occupied the building for only the 1956 season, or $100 per month if the lessee occupied it longer. However, Vegetable Packing House, Inc., only occupied the premises during the 1956 season, and the judgment includes the sum of $600 to cover the rental due the plaintiff.

Woodward grew the 200 acres of corn contracted for. He left it up to Vegetable Packing House, Inc., to harvest the corn and haul it to Plainfield for shipment. Gatzke testified that but 80 acres were so harvested, and the reason for not harvesting the remainder was because the corn was wormy. At the conclusion of the season Vegetable

Packing House, Inc., rendered a final statement to Woodward showing receipt of 11,340 sacks of sweet corn. Such statement credited Woodward with a price of eighty cents per sack but debited him with $4,762.80 of picking and trucking expense. Woodward disputed this charge and instituted the instant action to recover the balance he claimed due on the basis of a selling price of sixty cents per sack with no deduction for picking and hauling expense, and also to recover the item of $600 rent.

On the basis of the foregoing synopsis of the testimony favorable to the plaintiff, we experience no difficulty in finding that there was credible evidence to support all three answers of the jury to the question of the special verdict. If there was any indefiniteness in the original verbal agreement as to any material point necessary to be covered therein in order to have a valid contract, the same was removed by performance of the parties. Restatement, 1 Contracts, p. 44, sec. 33; 1 Williston, Contracts (3d ed.), p. 159, sec. 49, and cases cited in footnote 17. Such performance also resolved the original uncertainty as to which of Gatzke's two principals would be the contracting party.

Counsel for the defendant places great stress on certain testimony given by Woodward when examined adversely before trial. In such testimony Woodward stated that the original verbal contract was made with Gatzke as agent for Robert L. Berner Company, and that Woodward did not know that Vegetable Packing House, Inc., was the contracting party until he received the $3,300 check of June 1, 1956. However, such testimony was not conclusive upon the plaintiff. Where a party has given testimony on his examination before trial which conflicts with his testimony at the trial, it is for the jury to determine which story is to be believed. *Wallin v. Sutherland* (1948), 252 Wis. 149, 154, 31 N. W. (2d) 178, and *Parish v. Awschu Properties, Inc.* (1945), 247 Wis. 166, 174, 19 N. W. (2d) 276.

It is also urged by the attorneys for defendant that there was no meeting of the minds on the part of Woodward and Gatzke sufficient to establish the making of a contract. As previously pointed out herein, performance has rendered moot any issue as to original indefiniteness of the agreement. The fact, that Woodward testified that the price to be paid to him was to be not less than sixty cents per bag net, while Gatzke testified that the price was to be eighty cents per bag less picking and hauling expense, does not establish that there was no meeting of the minds as to price. It was within the province of the jury to believe Woodward and disbelieve Gatzke.

*By the Court.*—Judgment affirmed.