STEBANE NASH COMPANY, Respondent, v. CAMPBELLSPORT MUTUAL INSURANCE COMPANY and others, Appellants.

*March 1—March 30, 1965.*

114

116

For the appellants there were briefs by *Benton, Bosser, Fulton, Menn & Nehs* of Appleton, for the Campbellsport Mutual Insurance Company and Equity Town Mutual Insurance Company, and by *Bradford & Gabert* of Appleton, for the American Mutual Fire Insurance Company, attorneys, and *Peter S. Nelson* of Appleton of counsel, and oral argument by *Mr. Nelson* and *Mr. Stanley R. Gabert.*

For the respondent there was a brief by *Don R. Herrling* of Appleton, attorney, and *Henry P. Hughes* of Oshkosh of counsel, and oral argument by *Mr. Herrling.*

BEILFUSS, J. The defendants raise several issues upon appeal. We will first consider their contention that there is no proof of damage as to any insurable interest possessed by the plaintiff corporation.

It is clear that the plaintiff corporation did not and does not own the real estate, including the garage building destroyed in the fire. It is also without dispute that the real estate was owned by the four Stebane brothers individually, and that they had leased it to the corporation for a rental of $80 per month.

We are committed to what has been characterized by other courts and text writers as the "Wisconsin rule" of indemnity. The "Wisconsin rule" was enunciated in *Ramsdell v. Insurance Co. of North America* (1928), 197 Wis. 136, 138, 221 N. W. 654, as follows:

"There is no dispute that each policy was an indemnity contract providing for payment only in case of loss and only to the extent of that loss. While at one time gambling contracts in insurance were permitted, the modern view is to the contrary. Now it is practically the uniform rule that one must have an insurable interest and a loss before one can collect on a policy of insurance. This rule is based on public policy."

In the recent case of *Ben-Hur Mfg. Co. v. Firemen's Ins. Co.* (1962), 18 Wis. (2d) 259, 262, 118 N. W. (2d) 159, we stated:

"Public policy requires an insurable interest in property insured. A gambling or wagering agreement is void, sec. 331.055, Stats.; but that section provides a contract of insurance made in good faith for the security or indemnity of the party insured shall be lawful and valid. A fire insurance policy is an agreement to indemnify one for a loss caused by the specific peril insured against; but to constitute a loss for which indemnity can be made, one must have in the property an interest which is recognized as insurable. Such interest must consist of such valuable relationships as the law will recognize and enforce and must be susceptible of pecuniary value. Vance, Insurance (2d ed.), p. 118, sec. 48. A person has an insurable interest in property when the relationship between him and the property is such that he has a reasonable expectation, based upon a real or legal right, of benefit to be derived from the continued existence of the property and of loss or liability from its destruction. *Riggs v. Commercial Mut. Ins. Co.* (1890), 125 N. Y. 7, 25 N. E. 1058; 3 Couch, Insurance (2d ed.), p. 86, sec. 24:13.

"This court defined the nature of insurable interest in somewhat-broader terms. A person need not have an absolute insurable right of property in the thing insured or even a special limited interest. It is sufficient if a person's relationship to the property is such he would reasonably be expected to suffer a loss by the destruction of the property or to derive a benefit from its continued existence. Neither a legal nor an equitable interest nor any property interest as such in the subject matter is necessary. *Horsch v. Dwelling House Ins. Co.* (1890), 77 Wis. 4, 45 N. W. 945; *Tischendorf v. Lynn Mut. Fire Ins. Co.* (1926), 190 Wis. 33, 38, 208 N. W. 917. See also 29 Am. Jur., Insurance, p. 781, sec. 438."

The defendants do not dispute the rule that a tenant may have had an insurable interest in the premises leased but

vigorously contend that the plaintiff has not in any way proved what its insurable interest was or the value thereof.

A tenant's insurable interest can consist of a business-interruption loss under a lease for a definite term, for improvements made or the right to make improvements, the right or obligation to make repairs, and other interest, but recovery after loss is limited to the extent of his insurable interest.

"If the insured has an insurable but only a qualified, partial, or limited interest in the property insured against fire, he may not recover the full value or an amount exceeding his actual interest in the res. . . . the general rule is that the insured is limited in recovery to the value of his actual interest in the property insured." 3 Richards, Insurance (5th ed.), p. 1613, sec. 503.

The American Mutual and Campbellsport policies insured plaintiff to the extent of its interest in the land and building. The policies stated:

". . . does insure the insured named above and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, . . ."

Similarly, the Equity policy provided:

". . . does insure Stebane Nash Co., Inc., Forest Junction, Wisconsin and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance

for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacturing, nor in any event for more than the interest of the insured, . . ."

Under our indemnity-for-loss rule and the provisions of the policies issued, the plaintiff corporation's right to recovery is limited to its actual loss as determined by the evidence in the record. The only proof offered was as to the value of the building. Neither the lease nor any of its terms, other than monthly rental of $80 per month, appear. There is no proof the plaintiff corporation had made any improvements to the building nor that it was obligated to repair or insure the premises. The record is void of any evidence indicating that the plaintiff corporation suffered any financial loss by the destruction of the building. The damages of $14,000 to the building as found by the jury represented the fair market value of the building. This loss was sustained by the Stebane brothers individually and not by the corporation. The record does not show any obligation on the part of the corporation to reimburse the owners.

The plaintiff contends that the corporation was only a form of doing business and that the interest of the corporation and the Stebane brothers, the owners of the land, were one and the same and that there was a continuity of interest. Upon these arguments it urges that equity permit the corporation to assert the insurable interest that the brothers had in the building. If we were to accept this argument we would have to disregard the corporate entity. To do so would be to reject our latest pronouncement on this subject:

"A corporation is treated as an entity separate from its stockholder or stockholders under all ordinary circumstances. Although courts have made exceptions under some circumstances, this has been done where applying the corporate fiction 'would accomplish some fraudulent purpose, operate

as a constructive fraud, or defeat some strong equitable claim.' Those who are responsible for the existence of the corporation are, in those situations, prevented from using its separate existence to accomplish an unconscionable result. In the present case, those who created the corporation in order to enjoy advantages flowing from its existence as a separate entity are asking that such existence be disregarded where it works a disadvantage to them. We do not consider it good policy to do so." *Jonas v. State* (1963), 19 Wis. (2d) 638, 644, 121 N. W. (2d) 235.

In this instance, as in *Jonas,* it is the incorporators, not innocent or deserving third parties, who ask us to "pierce the corporate veil." We are not persuaded that the rule should be changed.

Shortly before the trial, and almost three and one-half years after the loss, the Stebanes executed a release of their interest in the proceeds of the policies, authorized the corporation to collect the proceeds, and ratified all acts the corporation had taken in that respect. The policies required that proofs of loss be filed within sixty days and that an action be started within one year of the loss. The Stebane brothers at no time filed a proof of loss, nor did they commence an action. Three and one-half years after the loss they had no enforceable rights to assign.

The plaintiff finally contends, with very little or no evidence in the record to support it, that the parties really intended to insure the building; that the companies collected and retained the premiums with no offer to refund them; that the companies did not affirmatively raise the defense of no insurable interest by pleading, nor until the plaintiff's evidence had been presented; that they were "coy" in concealing this defense until it was too late for the plaintiff to take remedial action.

If the defendants were in fact "coy" in concealing their defense, and we express no opinion as to whether they were, we have no admiration for those tactics.

Under the indemnity theory of fire insurance contracts the plaintiff has the burden of proving his insurable interest—it follows that the defendant is not required to affirmatively allege a lack of insurable interest to be able to rely upon it as a defense.

While the facts of this case arouse our equitable sympathies, the plaintiff has slept too long on the remedies available to it. Probably since the issuance of the policies, and certainly since the serving of the proofs of loss, the plaintiff has had knowledge and access to all the facts that might have entitled it to a reformation of the policies. It is too late for the plaintiff to ask for such relief now and too late for us to grant it.

The plaintiff is not entitled to recover for the loss of the building.

The defendants next contend that the plaintiff wilfully misrepresented the value of its loss in its sworn proof of loss as a matter of law, and that defendants are, therefore, entitled to a dismissal of the complaints.

The policies are standard statutory fire policies (secs. 203.01 and 202.085, Stats.), and contain the following statutory provision:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

The defendants also urge that the trial court committed prejudicial error as to the form of the question inquiring as to fraudulent proofs of loss, and that instructions and the reinstruction given concerning the question were incorrect and prejudicial.

The arguments as to these last three issues all go to the recovery sought because of the loss or destruction of the personal property and will be considered together.

Without detailing the evidence as to the value of the personal property as set forth in the statement of facts, we conclude without hesitation that values found by the jury were within and amply supported by the credible evidence presented to them. This is not a case where the plaintiff claimed a loss or destruction of property that did not exist or was not in the fire.[1] The claim of the defendants in their answers is that the values of the personal-property loss were wilfully misrepresented and that proofs of loss were false and fraudulent.

The purpose of plaintiff in submitting proofs of loss with figures representing cost or replacement value rather than depreciated market value is conflicting and, therefore, a jury question is presented. *Juneau Store Co. v. Badger Mut. Fire Ins. Co.* (1934), 216 Wis. 342, 257 N. W. 144; *Wiesman v. American Ins. Co.* (1924), 184 Wis. 523, 199 N. W. 55, 200 N. W. 304.

Overvaluation raises a presumption of fraud in proportion to the excess. However, there must be a showing that the statement is false and that such false statement is made with the knowledge that it is false and with the intent to deceive the insurer. Actual damage to the insurer is not required. An intent to deceive or defraud is required; this may be inferred from the circumstances. Where a party acts in good faith and with the honest belief that the property was worth the amount claimed, an excess found by the jury will not avoid recovery where intent to defraud is not shown. *Juneau Store Co. v. Badger Mut. Fire Ins. Co., supra.* For cases dealing with related problems see: *Monahan v. Mutual Life Ins. Co.* (1927), 192 Wis. 102,

---

[1] See *Bannon v. Insurance Co. of North America* (1902), 115 Wis. 250, 91 N. W. 666.

212 N. W. 269; *Wiesman v. American Ins. Co., supra;*
*Meyer v. Home Ins. Co.* (1906), 127 Wis. 293, 106 N. W.
1087; *Beyer v. St. Paul Fire & Marine Ins. Co.* (1901),
112 Wis. 138, 88 N. W. 57; *F. Dohmen Co. (Ltd.) v.
Niagara Fire Ins. Co.* (1897), 96 Wis. 38, 71 N. W. 69.

There seems to be no room for dispute that plaintiff's
proofs of loss did not reflect the actual market value of all
the property that was destroyed at the time of the fires.
Many of the parts and much of the equipment were old,
nevertheless replacement cost was submitted as the value
of the goods. Rueben Stebane testified that if he could not
obtain an old replacement part or piece of equipment he
would have to purchase a new one. Often prices were ob-
tained from new-parts catalogues. Of course, for new
parts, their value would remain at or near their "new"
value.

Overvaluation on one hand and wilful misrepresentation
and fraud on the other do not follow *ipso facto.*

It could be argued quite fairly that Rueben acted in good
faith, although misguided in his actions. The cases cited,
*supra,* reflect the rule that even where overvaluation is
great, and the circumstances would support a finding of
fraud, nevertheless the question is one of fact for the jury.

Brief comment should be made as to defendants' argu-
ment over the disparity between the values on the plaintiff's
tax return and the proofs of loss. ". . . statements made
by a taxpayer as to the amount of his taxable property are
not conclusive against him in actions between him and third
parties." *Wiesman v. American Ins. Co., supra,* page 532.
Defendants' argument overlooks the fact that in many in-
stances the "depreciated tax value" is legitimately not related
to actual market value. Accelerated-depreciation formulas
are illustrative of this fact. Thus, when a depreciable asset
is sold for more than its book value the gain is treated as

taxable income. Suffice it to say—the disparity was evidence; its weight was for the jury.

Question four of the special verdict, and the answers thereto, read as follows:

"Did the plaintiff file false and fraudulent proofs of loss in violation of the policies of defendants:

"(a) As to the damages resulting from the fire of July 17, 1959? *Answer:* No.

"(b) As to the damages resulting from the fire of July 23, 1959? *Answer:* No."

The court instructed the jury as follows:

"Question 4 inquires as to whether or not the plaintiffs Stebane Nash Company—now known as Stebane Rambler, Incorporated—fraudulently represented to the three insurance companies, and the question reads as follows: [Question read.]

"This question is known, as the Court has previously indicated, as the 'fraud question,' and the burden of proof required to establish fraud is upon the party who claims to have been defrauded. In this case, as I have previously pointed out, the burden is upon the three defendant insurance companies.

"In order to establish fraud there must have been made a representation which is false. The false representation does not have to be by word of mouth but may be by action or conduct on the part of the plaintiff.

"On the other hand, a mere expression of opinion does not constitute fraud. Whether or not the expression is made as a fact or as an opinion depends upon the circumstances as existed between the parties hereto. You are obliged to interpret the representations made in the light of the circumstances under which they were made.

"I have previously indicated that the defendant insurance companies contend that the plaintiff is guilty of fraudulent misrepresentation. A person is guilty of fraudulent misrepresentation if he or his agents at any time after a loss misrepresents the value of any of the property insured with the intent to deceive or mislead the insurer.

"To constitute a fraudulent misrepresentation there must be a false statement relating to a present or past state of facts.

"A statement is false if it states as fact or truth that which is known by the person making the statement to be false. When a misrepresentation as to the amount or extent of loss is made by a person who has the knowledge of its falsity for the purpose of having the insurer act thereon, the law infers that it was done for the purpose of misleading or deceiving the insurer."

While deliberating, the jury returned to the courtroom for additional instructions. The following appears in the record:

*"Foreman Hipke:* Did the plaintiff file false and fraudulent proofs of loss in violation of the policies of the defendants?

"The jury wonders if it might have been meant false or fraudulent, rather than false and fraudulent!

*"The Court:* In other words, if you have to find both elements rather than just one element?

*"Foreman Hipke:* That is correct, your honor."

The court's reinstruction was as follows:

"In a situation of this kind the Court usually re-reads the instructions on the subject. However, in view of the fact there was a specific question here as to whether the sole question—as the Court understands it—is if the jury has to find both false and fraudulent in order to answer this question 'yes' or whether they can answer it 'yes' simply by finding one or the other, the Court will reply to the jury's inquiry by saying that it is the duty of the jury in order to answer the question 'yes' to find both false and fraudulent. They must find both elements. In other words, if they find this were false but not fraudulent, they must answer this question 'no.' The words we used here were false and fraudulent, not 'or.' Therefore, you should find both elements in order to answer this question 'yes.' "

The statutory policy provision is as follows:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance

or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

In construing this provision and the jury instructions given in connection therewith, the court stated in *Juneau Store Co. v. Badger Mut. Fire Ins. Co., supra,* at page 348:

"The second of the fundamental controversies arises from the claim that although the loss occurred, the respondent cannot recover because of wilfully false and fraudulent acts and deceits practiced in its representations. As to this second phase of this case, the learned trial judge said in substance, that even if there were an overvaluation of the stock of merchandise, if the insured acted in good faith, in the honest belief that the property destroyed was worth the amount of the valuation placed upon it, and did not intend it to deceive or defraud the insurance companies, it was entitled to a finding that such overvaluation was not fraudulent. He instructed the jury that 'the proof must go further and satisfy . . . by a clear and satisfactory preponderance of the evidence, that in making such overvaluation and in submitting sworn proof of it to the insurance companies, the plaintiff insured intended to deceive or defraud the insurance companies.' He also told the jury, in connection with the quoted instructions, that the intentional falsification of books, records, invoices, or proof of loss, so as to show a greater amount of property on hand than existed, was fraudulent and would sustain a finding of fraud. Thus the facts may show an overvaluation by the insured, or the insured may admit it but deny any intention to defraud; the insurers then have the responsibility of meeting the requirements of the burden of proof to show the wilfulness and fraudulent character of such overvaluation."

And in *Meyer v. Home Ins. Co., supra,* at page 299, we said:

"If there was false swearing within the meaning of the policy, it was immaterial whether plaintiffs derived any advantage to the prejudice of the defendants in consequence thereof or not. . . . The use of the words 'false swearing'

in connection with the word 'fraud' plainly indicates that either fraud or false swearing was designed to have the effect of defeating the policy, regardless of the ultimate effect of the false swearing upon either party to the contract. False swearing, when knowingly and wilfully done with intent to defraud the insurer, avoids the policy regardless of the ultimate effect of such false swearing, and it is very plain that the word 'fraud' was used in connection with the words 'false swearing' so as to cover frauds otherwise than by false swearing. It is clear that if the words 'false swearing' be given their plain, ordinary meaning they cannot be held to mean that it was only 'false swearing' which worked an advantage to the insured to the prejudice or injury of the insurer in the adjustment and payment of the loss that can avoid the policy."

The answers of the defendants affirmatively allege the plaintiff wilfully misrepresented its loss and served false and fraudulent proofs of loss.

The verdict question and the instructions, including the reinstructions, could have been presented so as to fix the issue more clearly. In addition to defining a wilful misrepresentation and fraud, the jury more properly should have been instructed to the effect that wilful misrepresentation or false swearing need not actually mislead or defraud the insurance company in order to avoid the policy. In passing upon this instruction we must note that the instruction did *not* inform the jury that the insurance companies must have been misled or defrauded but only advised them that false statements must have been made with intent to deceive. The instruction is not an erroneous statement of the law but it could have been more explicit.

The reinstruction, taken with the original instruction, does not change the import of the original instruction.

The evidence in the record amply supports a factual conclusion that the misrepresentations of the plaintiff in the proofs of loss as to value of the personal property, if they be

such, were not wilfully or falsely made with the intention to deceive the insurer. The inadequacy of the verdict question and the instructions do not constitute prejudicial error.

The defendants contend it was error to send the insurance policies to the jury because the policy limits were exposed to the jury. The jury's verdict in no way reflected any improper influence. The policies were given to the jury to aid them in their consideration of the misrepresentation or fraud question under a proper cautionary instruction.

We are asked to grant a new trial in the interest of justice under our discretionary power contained in sec. 251.09, Stats. We are not convinced it should be done.

*By the Court.*—Judgment affirmed in part and reversed in part, with directions to enter judgment for the plaintiff limited to a recovery for personal-property loss, consistent with the opinion. No costs to be taxed.