EASTERBROOK, Circuit Judge.
 

 Portage County Bank was a secured creditor of Deist Forest Products, a debtor in a bankruptcy proceeding. The court permitted Forest Products to surrender to the Bank some of the property securing the loan, and the court in 1984 declared the debt of about $300,000 satisfied — indeed, declared in 1986 that the property was worth $8,000 more than the amount of the debt and ordered the Bank to pay that much to Forest Products (it did). The Bank never accepted this “cram down”, and it realized less than the amount of principal and interest due when it sold the property. It filed suit in state court to recover the shortfall from James and Jo Ann Deist, who guaranteed the firm’s debts. Forest Products returned to bankruptcy court seeking an injunction against the prosecution of the Bank’s suit in state court, arguing that the transfer of the property, coupled with the court’s declaration, satisfied the debt, preventing subsequent efforts to collect from guarantors.
 

 The bankruptcy court issued a temporary restraining order against the state suit but ultimately held, on the merits, that its earlier orders did not extinguish the liability of third parties on the debt. See
 
 Union Carbide Corp. v. Newboles,
 
 686 F.2d 593 (7th Cir.1982). The district court affirmed. We shall not reach the merits, leaving them for
 
 *341
 
 consideration by the courts of Wisconsin in the suit between the Bank and the Deists.
 

 It is questionable whether the bankruptcy court had subject-matter jurisdiction of the request for an injunction, which does not concern the rights and obligations of a debtor and is not supported by diversity of citizenship (Forest Products and the Bank are both citizens of Wisconsin). See
 
 In re Kubly,
 
 818 F.2d 643 (7th Cir.1987);
 
 In re Chicago, Rock Island & Pacific R.R.,
 
 794 F.2d 1182, 1187-88 (7th Cir.1986). It is doubtful, too, that the Anti-Injunction Act, 28 U.S.C. § 2283, permits the kind of relief Forest Products wants. See
 
 Chick Kam Choo v. Exxon Corp.,
 
 — U.S. -, 108 S.Ct. 1684, 1690, 100 L.Ed.2d 127 (1988), concluding that the relitigation exception to § 2283 deals only with questions actually resolved in the first case — and the bankruptcy court did not actually resolve in 1984 or 1986 whether the surrender of the property let the Deists off the hook as guarantors. Cf.
 
 Hickey v. Duffy,
 
 827 F.2d 234, 243 (7th Cir.1987). Neither the district court’s subject-matter jurisdiction nor § 2283 matters, however, because there is an even more fundamental obstacle. There is no “case or controversy” within the meaning of Article III of the Constitution.
 

 Forest Products has been released from liability on the debt to the Bank. It wants a decree that will benefit James and Jo Ann Deist, and them alone. Counsel for Forest Products conceded at oral argument that none of Forest Products’ legal entitlements could be affected by the outcome of the Bank’s suit against the Deists. Doubtless Forest Products wants to assist the Deists; in a sense Forest Products
 
 is
 
 the Deists, for it is a closely held, family corporation of which the Deists are the shareholders and managers. But the Deists and their firm are not as one in the eye of the law. The Deists would be quick to assert their limited liability for the debts of Forest Products, save to the extent of any guarantees. They are in no position to disregard the corporate form now — and Forest Products may not pierce its own corporate veil.
 
 Stebane Nash Co. v. Campbellsport Mutual Insurance Co.,
 
 27 Wis.2d 112, 133 N.W. 2d 737 (1965).
 

 This dispute therefore comes within the rule that to have a case or controversy a plaintiff must seek relief for himself, and the contemplated decree must have at least a potential to redress injury suffered by the litigant. See
 
 Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.,
 
 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The plaintiff’s desire to protect the rights of others does not permit a court to adjudicate the claim. E.g.,
 
 Sierra Club v. Morton,
 
 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). The Supreme Court sometimes permits one person to make legal arguments that depend on the entitlements of another person, e.g.,
 
 Craig v. Boren,
 
 429 U.S. 190, 192-95, 97 S.Ct. 451, 454-56, 50 L.Ed.2d 397 (1976) (saloon may assert that differential age for beer sales is unconstitutional sex discrimination, although a saloon is neuter). It does this, however, only when a victory will produce concrete benefits for the plaintiff (in
 
 Craig,
 
 a lower age for males’ purchases of beer would increase the saloon’s business), and when there is some obstacle to the primarily affected person’s invocation of his own rights, as in
 
 Virginia v. American Booksellers Ass’n,
 
 — U.S.-, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988). Even when
 
 jus tertii
 
 claims might produce benefits for the litigant, prudential considerations frequently counsel against adjudication. See
 
 Phillips Petroleum Co. v. Shutts,
 
 472 U.S. 797, 804-05, 105 S.Ct. 2965, 2970-71, 86 L.Ed.2d 628 (1985);
 
 FAIC Securities, Inc. v. United States,
 
 768 F.2d 352, 357-61 (D.C.Cir.1985) (Scalia, J.); see also Kenneth E. Scott,
 
 Standing in the Supreme Court
 
 — A
 
 Functional Analysis,
 
 86 Harv.L.Rev. 645, 674-80 (1973); cf. Lea Brilmayer,
 
 The Jurisprudence of Article III: Perspectives on the “Case or Controversy" Requirement,
 
 93 Harv.L.Rev. 297 (1979). The limits on standing are vital in bankruptcy, where clouds of persons indirectly affected by the acts and entitlements of others may buzz about, delaying final resolution of cases.
 
 Kane v. Johns-Man-
 
 
 *342
 

 ville Corp.,
 
 843 F.2d 636, 641-46 (2d Cir.1988).
 

 The shifting contours of proper
 
 jus tertii
 
 litigation produce many difficult cases. It is questionable whether the division of standing into “core” and “prudential” components makes sense — or reflects a coherent vision of the “judicial power of the United States.” See Henry P. Mona-ghan,
 
 Third Party Standing,
 
 84 Colum.L. Rev. 277 (1984). None of these doubts or wrinkles matters, however, for this is not a hard case from any perspective. The injunction Forest Products seeks would do it no good; it would assist the Deists exclusively. The Bank initially named Forest Products as a party to the state case but dismissed it before the bankruptcy court issued its decision. Perhaps Forest Products’ presence in the state case would have entitled it to a decision from the federal court. Once Forest Products vanished as a litigant in state court, however, any case or controversy in the federal court evaporated. There must be a live controversy at every stage of the litigation.
 
 Honig v. Doe,
 
 — U.S.-, 108 S.Ct. 592, 601, 98 L.Ed.2d 686 (1988);
 
 Steffel v. Thompson,
 
 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1215 n. 10, 39 L.Ed.2d 505 (1974). If there ever was a controversy between Forest Products and the Bank, there is none today. The Deists must assert their own rights — if they have any, a subject on which we express no view — in the litigation between them and the Bank.
 

 The judgment of the district court is vacated, and the case is remanded with instructions to dismiss Forest Products’ adversary proceeding for want of a justiciable controversy. No costs.