WILL OF EHLKE: WOLF and another, Appellants, vs. RAMLOW, Respondent.*

*March 13—May 1, 1945.*

* Rehearing granted and reargument ordered on certain questions only.  See *post,* p. 660.

For the appellants there were briefs by *Affeldt & Lichtsinn* for Mildred Wolf, and *John M. Redford* for Harold Wolf, attorneys, and *Eldred Dede* of counsel, all of Milwaukee, and oral argument by *Mr. H. F. Lichtsinn* and *Mr. Redford*.

*Alfred Kay,* attorney, and *Ward Dunphy* of counsel, both of Milwaukee, for the respondent.

FAIRCHILD, J. The record now before us shows the mental capacity of the testatrix, her strength of character, and the relationship existing between her and the other members of the family more fully than the record on the prior appeal. A study of the evidence impels the conclusion that the court below was justified in admitting the will to probate.

A petition to have a guardian appointed for the testatrix, signed by proponent and executed January 3, 1941, some time before the will was made, was offered in evidence. The judge's comment shows the treatment of that evidence and the rulings thereon. He excluded the petition as of no importance in determining testamentary capacity but stated that whatever impeachment value it may have had upon Mrs. Ramlow's testimony had been considered by the court.

The point is made that the petition constituted an admission by a party, and as such substantive evidence of the incompetence of testatrix. Mrs. Ramlow was the proponent and chief beneficiary under the will. An admission may be said to be a fact to be proved, and the probative value may weigh against a prior self-contradiction as a matter of impeachment or, if made by a party, it may be used as having testimonial value such "as belongs to any testimonial assertion under the circumstances; and the more notably they run counter to natural bias or interest of the party *when made,* the more credible they become; this element adding to their probative value, but not being essential to their admissibility." 4 Wigmore, Evidence (3d ed.), p. 5, sec. 1048; *Leslie v. Knudson* (1931), 205 Wis. 517, 238 N. W. 397. 1 Elliott, Evidence, p. 314, sec. 220, says: "The true theory upon which admissions of a party are held competent is somewhat difficult to ascertain. It is frequently said that they are competent because they are made by the party against his own interest, and the ordinary motives of human conduct are sufficient warranties for belief."

The petition was drafted by Walter A. John, Esq., and signed and sworn to by the proponent, the respondent here. Upon the former trial the petition was received in evidence as was Mr. John's testimony concerning its drafting. At one time in this trial, when reference was made to that document, among other things it was said by the court:

"If it is material here, or whether it is not, it won't have much bearing on the outcome of this trial. My feeling, as I expressed earlier, was that the mere preparation or signing and verifying a petition for the appointment of a guardian was a fugitive paper, although it was put in evidence in the former trial, but unless it was put in the court and service had to start the proceeding, it was a fugitive paper. . . . If it was erroneously admitted in the record the last time, and that record is before this court, to that extent, perhaps, this court has no power to withdraw it. This matter is on trial

before the judge. And I think that we may very well let it rest in peace right at this point."

The petition, since no proceedings were taken thereon, can amount to no more than evidence of a declaration or admission by Mrs. Ramlow that on the date of the petition she considered her mother to be mentally incompetent by reason of advanced age. As the opinion of Mrs. Ramlow, it technically should have been admitted for whatever probative value it may have had in establishing the mental capacity of the testatrix. As we have said, an admission made by a party to an action and amounting to an assertion of fact is admissible not only for its impeachment value as a contradictory statement, but in establishing the truth of the statement. 4 Wigmore, Evidence (3d ed.), p. 312, sec. 1048; *Warder v. Fisher* (1880), 48 Wis. 338, 344, 4 N. W. 470. But not all errors in refusal to admit competent evidence will result in reversal. Only when such denial is prejudicial to the rights of the opponent and could be expected to affect the result of the case is there reversible error. Sec. 274.37, Stats.; 3 Am. Jur. p. 587, sec. 1030, and p. 594, sec. 1037; *Murphy v. Skinner* (1915), 160 Wis. 554, 152 N. W. 172; *Green v. Northwestern Trust Co.* (1914), 128 Minn. 30, 150 N. W. 229. It is quite evident from the memorandum decision of the trial judge and his rulings in the progress of the trial, that his determination to exclude this document did not affect the court's disposition of the case, and had it been recognized as substantive evidence, and had the trial court's findings been precisely as they were filed, we would have to hold that his findings were not against the great weight and clear preponderance of the evidence. It appears from the record that on February 24, 1941, a little over a month after the petition had been drafted and after it was withdrawn, a power of attorney was executed authorizing Mr. Kay to act for and on behalf of testatrix in the transaction of her affairs. This evi-

dence might have the effect of casting some doubt upon the probative value of the execution of the petition as an expression of Mrs. Ramlow's opinion as to testatrix's competency. It might indicate that the action contemplated was a mere effort to free testatrix of the necessity of transacting her business affairs because of her age. The evidence, at the most, might have had some value as establishing Mrs. Ramlow's opinion of testatrix's capacity. But there is much testimony by other witnesses revealing the strength of mind and will of the testatrix in the conduct of her affairs all tending to establish her competency. The objector on this appeal does not contend that there was a lack of testamentary capacity but rests his case solely on the proposition of the exercise of undue influence. Evidence of the execution of the petition did appear. The court did consider its value as impeaching testimony. Indeed, it may be fairly said, that the objector had the benefit of the evidence although the court indicates that as substantive evidence, it considered the probative value of the petition as of no great consequence.

Under the circumstances, it is considered that the refusal of the court to treat the petition as affirmative evidence did not result in prejudicial error.

The point is suggested upon this appeal that the trial court was in error in refusing to grant a continuance because of the absence of two of the contestants due to their service in the armed forces. The Soldiers' and Sailors' Civil Relief Act, 50 USCA, sec. 521, provides:

"At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this act, unless, in the opinion of the court, the ability of the plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

Mildred Wolf and Harold Wolf were both heirs at law of the deceased and would inherit if the will were denied probate. It appears that neither Harold Wolf nor Mildred Wolf were in the armed forces when objections to admission of the will to probate were served on proponent on June 1, 1942. The objections were filed by Mildred Wolf. Harold Wolf filed no objection. Sometime before the first trial Harold Wolf entered the armed services. However, the objector did not desire him as a witness nor did she ask for a postponement because of his absence. It was at the request of the attorney for proponent that counsel was appointed to protect Harold's interests. In view of these circumstances, it is apparent that Harold Wolf's interest and appellants' ability to prosecute the action without the presence of Harold Wolf was not materially affected by reason of his military service. As to the absence of Mildred Wolf, the record shows that she was present at the first trial of the action and Mildred's testimony was detailed and exhaustive. The trial court had the benefit of that record and found that any testimony she might have given would have been merely cumulative. Her absence could not materially affect the prosecution of the action. It also appears that the association of Mildred and Harold with the testatrix was not of a character or nature which would be at all likely to enable them to throw more light upon the matter.

The purposes of the Soldiers' and Sailors' Civil Relief Act are to preserve the rights of those in the armed service while serving their country in time of war and to enable them to devote their energy to their military duties. But it was not the intent of congress to allow a protracted delay in disposing of actions where no possible advantage could be secured to the serviceman by being present at the trial of the action. Here no prejudice to such rights resulted.

*By the Court.*—Order affirmed.

On June 15, 1945, a rehearing was granted and the case set down for reargument on the September assignment of the 1945 calendar on the following questions only:

(1) On the record made in the trial court, does it appear that the court abused its discretion in proceeding to trial without the presence of Mildred Wolf or Harold Wolf, members of the armed forces of the United States, in that, having in mind the relation of Mildred Wolf and Harold Wolf to the litigation, were their rights under the Soldiers' and Sailors' Civil Relief Act denied to them as a matter of law?

(2) Did the trial court have authority on the motion of the proponent to appoint John M. Redford, Esq., to appear for and on behalf of Harold Wolf without the knowledge or consent of Harold Wolf?

The case will therefore be found further and fully reported in 247 Wis. [REPORTER.]