JANSEN, Respondent, vs. HERKERT and another, Appellants.

*May 23—June 22, 1946.*

*L. Hugo Keller* of Appleton, for the appellants.

For the respondent there was a brief by *Benton, Bosser, Becker & Parnell,* attorneys, and *David L. Fulton* of counsel, all of Appleton, and oral argument by *Andrew W. Parnell.*

WICKHEM, J.   Defendants contend: (1) That as a matter of law plaintiff assumed the risk of injury; (2) that she was guilty of contributory negligence in going to sleep in the automobile; (3) that the issues as to defendant's negligence should have been submitted to the jury; (4) that certain evidence was erroneously excluded; (5) that the damages are excessive.   These contentions require a consideration of the facts.

Plaintiff was twenty-five years of age and lived in the village of Little Chute.   Pursuant to an understanding she came to the Conway Hotel in Appleton on November 8, 1944, at about 7 o'clock in the evening and met defendant, a traveling employee of Allis-Chalmers Company, whose residence was in Milwaukee, but who maintained temporary headquarters at the Conway Hotel.   Plaintiff and defendant stayed at the cocktail bar of the Conway Hotel until 1 o'clock when the bar closed in compliance with legal requirements.   During this time a number of drinks were had, but it is not claimed that defendant was under the influence of liquor.   After closing time, plaintiff and defendant decided to go to a roadhouse

known as "Slim's Meadows," located south of Appleton, approximately three and a half miles from the hotel. Defendant drove his car. At the time when plaintiff and defendant came out of the hotel the weather had turned foggy, although there is considerable conflict in the testimony as to how foggy it was. Defendant drove south through the city of Appleton on South Oneida street. They went to "Slim's Meadows," stayed there a short time and had several drinks. When they left this place they drove left or south away from Appleton and Little Chute. After proceeding south a short distance, they turned west to a state trunk highway, north to the city limits of Appleton and east in the city until they reached South Oneida street. Defendant then drove north on South Oneida street, through the city, until he reached Wisconsin avenue, where he stopped at an arterial sign. He then asked plaintiff if he should take old Highway 41, which had a number of bad curves on the way to Little Chute, or whether he should proceed due north to new Highway 41, which ran almost in a straight line. Plaintiff had been riding with her head on his shoulder and when she failed to answer he discovered that she was asleep. He proceeded due north on the road on which the accident occurred. The roadway was of dark construction and, according to him, visibility was not good. He knew the road well; he had been over it hundreds of times. He misjudged a slight jog in the road, the right side of his car went down into a shallow, sloping ditch, and either because his foot slipped from the brake to the accelerator, or through some other failure of control, the car came out of the ditch, proceeded north and ran into a tree.

The only claim that defendant makes in respect of his negligence is that there was a jury question upon that point. In view of our later conclusions we will assume the correctness of defendant's contention and shall not examine it further.

Defendant contends that as a matter of law plaintiff assumed the risk of all hazards arising, (1) from defendant's

drinking, and (2) from the conditions of visibility created by the fog. Assuming that the fog or the drinking had a causal relation with the accident, defendant's contention is undoubtedly sound. The question is whether there is any evidence that these hazards contributed causally to the accident, and if so, whether a jury question is presented. In view of our conclusions upon procedural matters later to be discussed, we need go no further than to hold that there was at least a jury question whether the hazards of fog contributed causally to the accident. We discover no evidence that the drinking resulted in an impairment of defendant's capacity as a driver. As to the fog, there is some evidence that defendant's vision was cut to fifteen or twenty feet. There is other evidence that he could see for seventy-five feet ahead of him. Defendant knew the road, knew the location of the jog, and testified that he saw the latter but "misjudged" it. Upon this evidence a jury could find that the fog was not a factor in causing defendant to misjudge the location of the jog. Further than this, a jury certainly could find that after he had driven into the ditch, which was shallow and sloping, the fog had no bearing upon defendant's further mismanagement of the car. Hence, the most defendant can make of the assumption-of-risk issue is a jury question. The fact that plaintiff may have been asleep does not present even a jury question. There is nothing in the evidence to indicate that had plaintiff been awake she could have done anything for her own protection. Defendant's management of the car, which resulted in the accident, was a momentary lapse, and plaintiff could not effectively have protested or in any other way acted to avoid the accident. Under these circumstances, *Forbes v. Forbes,* 226 Wis. 477, 480, 277 N. W. 112, and *Schmidt v. Leuthener,* 199 Wis. 567, 227 N. W. 17, are determinative. In the *Forbes Case,* commenting upon the negligent acts there involved, the court said:

"They were committed suddenly upon his approaching and passing the other automobile, and they followed in such rapid succession that there was no time or opportunity for her to protest or leave the car to avoid injury, even if she had been awake, instead of dozing."

To summarize, the most defendant could claim upon the record is that there was a jury question as to his negligence and plaintiff's assumption of risk, and in view of this, we shall not examine or determine plaintiff's contention that defendant was negligent as a matter of law and that as a matter of law plaintiff assumed no risk.

In the light of these conclusions we now consider the procedural situation. As heretofore stated, both parties had requested a special verdict without specifying the questions to be submitted. At the close of the evidence plaintiff moved the court to find negligence as a matter of law on the part of defendant, and that there was no assumption of risk or contributory negligence on the part of plaintiff. Plaintiff asked the court to submit the question of damages only.

Defendant moved the court to find as a matter of law that plaintiff assumed the risk of the speed at which the car was being operated under the circumstances at the time of the accident and to dismiss plaintiff's complaint. Thus, the only question requested by either party related to damages and the court submitted that question. There is some discussion in the briefs whether sec. 270.26, Stats. 1943, is applicable to this situation. This section provides:

"Whenever in an action tried before a jury all the parties to the action shall, without reservation, move the court to direct a verdict, such motions shall, unless otherwise directed by the court before the discharge of the jury, be considered as equivalent to a stipulation by the parties waiving a jury trial and submitting the entire case to the court for decision of the facts as well as the law."

We do not consider it necessary to pass upon this question. Since both parties asked for a special verdict specifying, with one exception, no particular issues to be submitted, and since the trial court did submit a special verdict in respect of damages, two consequences follow under the provisions of sec. 270.28, Stats.: (1) The parties must be held to have waived, with exception of the question of damages which was submitted, their right to a jury trial on the other contested issues of fact; (2) these issues are "deemed determined by the court in conformity with its judgment."

Sec. 270.28, Stats., reads:

"When some controverted matter of fact not brought to the attention of the trial court but essential to sustain the judgment is omitted from the verdict, such matter of fact shall be deemed determined by the court in conformity with its judgment and the failure to request a finding by the jury on such matter shall be deemed a waiver of jury trial *pro tanto*."

The above rule as to waiver was applied in the following cases: *Kline v. Washington Nat. Ins. Co.* 217 Wis. 21, 258 N. W. 370; *Laurent v. Plain,* 229 Wis. 75, 281 N. W. 660; *Hoffman v. Labutzke,* 233 Wis. 365, 289 N. W. 652; *Zoellner v. Kaiser,* 237 Wis. 299, 296 N. W. 611; *Hutzler v. McDonnell,* 242 Wis. 256, 7 N. W. (2d) 835. To the same effect under sec. 270.28, Stats., as it stood prior to the amendment of 1936, see *Conway v. Providence Washington Ins. Co.* 201 Wis. 502, 230 N. W. 630, and *Delfosse v. New Franken Oil Co.* 201 Wis. 401, 230 N. W. 31. There being at least a jury question upon all the determinative issues, application of the specific provisions of sec. 270.28 requires us to hold that these controverted matters of fact are "deemed determined by the court in conformity with its judgment."

It is next contended that the court rejected an offer of proof by defendant to the effect that after leaving Slim's Meadows tavern defendant turned off South Oneida street onto a town-

line road and parked there for a period of approximately twenty to thirty minutes; that subsequently defendant proceeded as indicated heretofore in the statement of facts; that the additional mileage covered over that necessary to reach the city was approximately four or five miles. It is asserted that this evidence was vital on the question of Mildred Jansen's intent in relation to her "willing acquiescence of additional hazards." It is asserted that plaintiff's intent in making this added trip with its added hazards constituted material inquiry for the court and jury. We are unable to see how the exclusion of this evidence prejudiced defendant. The mere fact that parties parked on the highway has no relation to the hazards of fog and drinking which are asserted to be in this case. The incident occurred long before the accident. The deviation from a direct trip to Appleton is of no consequence because the accident did not happen during the deviation. In so far as it showed a willingness on the part of plaintiff to ride with defendant, it was wholly unnecessary, because the evidence is clear that plaintiff was perfectly willing to ride with him. We conclude that no prejudicial error is disclosed.

Defendant's next contention is that the damages are excessive and that the court committed prejudicial error in permitting the exhibition of plaintiff's feet and ankles to the jury. Plaintiff sustained a cerebral concussion, fracture of several ribs, fracture of the shaft of the left ulna, fracture of the cuboid of the left foot, and a badly comminuted fracture of the second cuneiform of the left foot. There is evidence to the effect that she was in the hospital for about three weeks from the time of the accident. Upon going to the hospital a manual reduction of the fracture of the foot was attempted but X ray showed multiple shattered bone fragments. Another attempt at reduction of the fractures by manipulation was made about a week later. This being unsuccessful, a reduction was attempted by the use of Kirschner Wires and application of a pulling force. This attempt was unsuccessful, and on Novem-

ber 24th an open reduction was made which disclosed a badly fragmented condition of the bones. It was necessary to remove the cartilaginous surface of several of the bones of the ankle and a fusion of the bones was attempted. This shortened the length of the foot, precluded articulation of the bones of the foot, and destroyed the joint surface in the area. A cast was put on which was not removed until February 17th at which time there was evidence of decalcification. The foot was rigid and painful and flat. Another operation was performed on April 18th. At that time the bones were carved so as to realign the foot and allow for more motion. The cast was replaced and left until August. Plaintiff has a short and permanently rigid foot. The arch functions abnormally. There are painful adherent scars to the foot and there is some atrophy of muscles of the left leg. She has difficulty in climbing stairs, walking, standing on tiptoe, or standing for any length of time. She has a scar on her right cheek approximately one to one and a half inches in length. She suffers headaches which will continue in the future. As a result of injury to her arm, a condition of permanent atrophy has developed in the muscles. The severity of her injuries is indicated by the length of time she was under treatment and the size of the bills for medical, hospital, and nursing services. The only portion of the verdict which is under attack is an award of $2,100 for pain and suffering to the date of trial and $5,500 for disability in the future. In view of the character of the injuries, including their permanent effects and the unusually long and extensive course of treatment required, we are unable to say that the damages were so excessive as to indicate passion and prejudice or to call for a reversal conditioned upon the usual options.

We have considered the contention of defendant that it was error to permit the exhibition of plaintiff's foot and ankle

to the jury, and are unable to discover that the trial court abused its discretion in this respect. There is no evidence that the exhibition violated the proprieties, and the only purpose for which the testimony was allowed was to let the doctor show "in what way the injured foot differed from her other foot." From the record it appears that plaintiff's counsel asked leave to exhibit both feet to the jury to show the deformity in the injured foot. This was objected to as prejudicial. Plaintiff went into chambers, removed her shoes and stockings, then returned to the courtroom and sat on a chair before the jury. The doctor was then asked to explain to the jury the difference between the injured foot and the uninjured one, and the court meticulously held the doctor to the permitted purpose of the examination. We are unable to discover from the record anything to indicate that this was prejudicially erroneous.

*By the Court.*—Judgment affirmed.