WIDNESS, Respondent, vs. CENTRAL STATES FIRE INSURANCE COMPANY and others, Appellants.

*April 3—May 8, 1951.*

160

For the appellants there were briefs by *Hughes, Anderson & Davis* of Superior, and oral argument by *J. L. Davis.*

For the respondent there was a brief by *Crawford & Crawford,* and oral argument by *R. A. Tomlinson,* all of Superior.

MARTIN, J. The verdict herein was approved by the trial court and must be sustained if there is credible evidence to support it. *Wallin v. Sutherland* (1948), 252 Wis. 149, 152, 31 N. W. (2d) 178; *Sonnenberg v. Hardware Mut. Casualty Co.* (1949), 255 Wis. 261, 264, 38 N. W. (2d) 491.

The question of the value of the hay is not contested by the defendant on appeal. It is their contention that the barn would not hold the quantity of hay plaintiff claims was there. They rely principally on three exhibits, photographs showing the Jones barn and silo in question before the fire. It is agreed that the barn loft was 50 feet wide and 100 feet long, but there is considerable testimony regarding the height of the barn and all of the witnesses did not agree upon the height.

Plaintiff testified that: It was 30 feet from the floor to the crossbeams; the peak of the barn was 10 to 15 feet above the beams; the distance from the floor to the peak was 45 feet; the hay was piled 26 bales high; a truck loaded 13 feet 5 inches would go in the hay-barn door with sufficient clearance; the crossbeams were 12 to 14 feet above the door; the height of the stock barn was 6½ feet; posts in the barn were 12 by 12 inches; extra timbers had been provided by the owner for strengthening the floor of the hay barn and were put in place; the average standard bale is 14 by 16 by 40 inches; and the minimum weight is 80 pounds per bale.

William Kimmes, present owner of the farm and a highway contractor, who did not live on the premises, testified that there were extra timbers as supports, size 12 by 12 inches; that when some men put a new roof on the silo

they said they were 50 feet up in the air; and that the peak of the barn would not be as much as five feet below.

Merle Saylor, who lived on the farm from 1913 to 1936, testified on behalf of defendants that: The height of the stock barn was 7 feet; it was 20 feet from the concrete floor in the stock barn to the plate of the roof; the over-all height of the barn from the floor of the stock barn to the peak was 40 to 42 or 43 feet; and that the tile part of the silo was supposed to be 40 feet but 2 feet was gained by the mortar between the tile.

Klaus Helske, a draftsman in an architect's office, testified he measured the tile silo and found it to be about 43 feet and that the height of the barn was about 42 feet.

Leo McGauley, a licensed engineer, testified that he inspected the remains of the barn and talked with various people concerning its size and that in making his computation he assumed the barn to be approximately 42 feet in height, and from the floor to the plate 20 feet, and the wall studding was 20 feet.

Assuming those figures, McGauley testified the cubic content of the barn would allow 762 tons of hay with a bale size 14 by 18 by 3 feet 7½ inches and weighing 80 pounds. As computed, from the floor to the top of the plate, the cubic content would be 100,000 cubic feet, and the portion above within which hay could be stored would be 37,000 cubic feet. He allowed 6,000 cubic feet for clearance of the bales, leaving a total of 131,000.

Klaus Helske, the draftsman, testified that in a bale of hay 14 by 16 by 38 (size of bale as testified to by a farmer who buys and sells hay), there are 4.875 cubic feet and assuming the dimensions of the barn to be 50 by 100 by 45 feet and—

14 feet from the loft to the plate, 137,000 cubic feet;
16 feet from the loft to the plate, 147,500 cubic feet;
18 feet from the loft to the plate, 157,500 cubic feet;
20 feet from the loft to the plate, 167,500 cubic feet.

Several witnesses testified that there were 25 bales in a ton of hay. Using the figure of 4.875 cubic feet in a bale of hay produces a result of 121.875 cubic feet in a ton. The jury found that there were 728 tons of hay on hand, and using these figures, would amount to 88,725 cubic feet.

Plaintiff testified the average size of a bale would be 14 by 16 by 40 which would be 5.185 cubic feet. 25 x 5.185= 129.625 cubic feet per ton. 728 x 129.625=94,367 cubic feet.

The trial court stated:

"From some of the testimony of Mr. Helske, if the jury saw fit to believe it, they could have found that there was less than 100 tons of hay in the barn. [Referring to his testimony that the loft would not hold more than 94.8 tons without falling.] On the other hand from a portion of his testimony if the jury believed that testimony as to the cubical content, the jury could find that it held 732 tons of hay."

Appellants also assert that the wires found in the debris accounted for only 88 tons of wire-bound hay. The jury could believe that many of the wires were not found and then, too, there is evidence that much of the hay was twine-bound.

There is evidence that the 728 tons of hay would go into the barn with ample clearance.

Defendants claim that it is necessary to assume that there are 270 to 275 cubic feet in a ton of hay. This is based on the testimony of the insurance adjuster that he always used 270 feet in settling fire losses, and on the testimony of a farmer that 275 cubic feet of baled hay per ton is used in the hay business. Using 270 cubic feet per ton, 196,560 cubic feet would be required to store 728 tons of hay or, in other words, 2.215 times more space than the computation using the 121.875 figure.

The weight discrepancies in the statement of witnesses as to the number of tons of hay that a barn of a given size

would hold was due to the method which they used. The jury had a right to use whichever method they desired in making their calculation.

The photographs show that the height of the barn is below the tile silo, but the exact distance cannot be determined because there is a difference in perspective of view. On behalf of the defendants, Witness Helske testified that the silo was 43 feet and the barn 42 feet; Witness William Kimmes testified that the silo was 50 feet and the barn would not be 5 feet below the height of the silo.

The figures used in the computations are supported by evidence.

The plaintiff made a record of the baling as it was done in the field and this record, together with other records, was destroyed in a truck accident on November 6, 1949. The operator of the baler furnished him with a record of the tally of the bales which had gone through the hay baler. The total number of bales which went through the hay baler was 11,530. The bales averaged 80 pounds to a bale or 25 bales to a ton, or the amount of 461 tons of hay produced from the four farms where plaintiff purchased hay stumpage, known as Douglas county or mixed hay. He sold 292.25 tons, leaving on hand at the time of the fire 168.75 tons.

Plaintiff kept a record of the western alfalfa hay which he purchased from two truckers and this totaled 560 tons, the amount purchased and on hand at the time of the fire. He testified from an original record made by him at the time the loads were delivered in the barn.

The defendants contend that there were errors in the receipt of evidence and in the rejection of evidence offered on the trial.

Sec. 274.37, Stats., provides:

"No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper ad-

mission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

The trial court in its memorandum opinion considered the contention of the defendants with respect to the motion for judgment notwithstanding the verdict and for a new trial upon the usual grounds and stated: "We do not think there are any grounds for a new trial in this matter."

Errors will not be regarded on appeal, fatally prejudicial, unless, from the whole record, it appears with reasonable clearness, that had they not occurred the result might, probably, have been materially more favorable to the complaining party. *Koepp v. National Enameling & Stamping Co.* (1912), 151 Wis. 302, 306, 307, 139 N. W. 179.

A refusal to admit competent evidence is reversible error only when such refusal is prejudicial to the rights of the party and could be expected to affect the result of the case. *Will of Ehlke* (1945), 246 Wis. 654, 657, 18 N. W. (2d) 490.

Defendants have objected to the testimony of Mr. Mc-Gauley, the engineer, on the ground that some of the dimensions of the loft described by him were based on hearsay and also that testimony with respect to the amount of hay that could be stored in the loft should have been stricken. Mr. McGauley testified as to a mathematical calculation he had made as to the cubic content of a barn of a certain size. Mr. Helske was also asked to give the cubic content of the barn with certain measurements and using the average-bale method of calculation. His findings do not vary greatly from Mr. McGauley's. Mr. Helske also gave testimony as to the tonnage of the barn with varied measurements on the basis of 270 cubic feet per ton of baled hay,

which defendants claim is the correct computation. If this computation of tonnage were based on plaintiff's method, the result would show that the barn would hold the 728 tons with space remaining. Under the circumstances, we find no error in the admission of McGauley's testimony.

Defendants contend that the trial court erred in permitting the plaintiff to testify what the hay baler had written to him respecting the number of bales baled by him for the plaintiff when the plaintiff had no firsthand record thereof himself and where the baler was available as a witness.

As stated previously, plaintiff testified that his original record of the bale tally was destroyed in an accident and the baler subsequently furnished him with a record. Plaintiff's counsel asked that the witness (plaintiff) be allowed the testimony of what his recollection was of the total tally. The court overruled the objection, based on hearsay, and permitted plaintiff to answer. If this was error, it clearly was not prejudicial. Plaintiff informed the insurance agent when he made application for the policies that he had between 750 and 800 tons of hay in the barn. At the trial he testified he had 732 tons of baled hay at the time of the loss. The testimony of the plaintiff as to the amount of hay in the barn is corroborated by the evidence that the barn would hold the quantity of hay which the jury found was in it at the time the barn and its contents of hay were destroyed by fire.

Defendants contend further that plaintiff should not have been permitted to testify as to loads of hay "from purported original records, no dates being shown, and the record consisting solely of a list of numbers on a yellow sheet in a pad."

Plaintiff satisfied the court that this record was made at the time the hay was received and that he was there personally when each load was delivered.

We do not feel that it is necessary to discuss the various other errors complained of by the defendants. We have

carefully checked the record and can see no prejudice which has resulted from the refusal to admit evidence or the receipt of it. If there was any error committed, it does not appear that a different result would have been reached or that substantial rights of the defendants have been affected by the rulings of the court.

The defendants in their answer and on this appeal claim that there was fraud and false swearing on the part of the plaintiff in the proof of loss submitted, because at the time he purchased the insurance he told the agent that he had 750 to 800 tons of hay in the barn; and in his proof of loss that he had 650 tons in the Jones barn at the time of the fire; and at the trial he testified he had 732 tons of baled hay at the time of the loss.

No useful purpose would be served in discussing this matter in detail. The defendants have failed to show by a clear and satisfactory preponderance of the evidence that the plaintiff intended to deceive or defraud the insurance companies. The record does not show that the defendants ever requested that a question be submitted to the jury as to whether or not there was a violation of the fraud and false swearing portion of the fire policies as defined in sec. 203.01, Stats.

Sec. 270.28, Stats., reads:

"When some controverted matter of fact not brought to the attention of the trial court but essential to sustain the judgment is omitted from the verdict, such matter of fact shall be deemed determined by the court in conformity with its judgment and the failure to request a finding by the jury on such matter shall be deemed a waiver of jury trial *pro tanto*."

The failure on the part of the defendants to request a question on an issue which they assert as a defense constitutes a waiver of their right to have the same submitted to a jury, and such matter of fact is "deemed determined by

the court in conformity with its judgment." *Jansen v. Herkert* (1946), 249 Wis. 124, 130, 23 N. W. (2d) 503.

The verdict herein is supported by evidence and must stand as approved by the trial court.

*By the Court.*—Judgment affirmed.