Joseph E. **SAYEN**, Jr., Plaintiff-Appellee,

v.

Edwin J. **RYDZEWSKI** and Badger Mutual Insurance Company, Defendants-Appellants.

No. 16064.

United States Court of Appeals
Seventh Circuit.

Dec. 21, 1967.

Ellis R. Herbon, L. William Staudenmaier, Milwaukee, Wis., for appellants.

Richard J. O'Brien, Houghton, Mich., P. G. McGill, Douglas S. Moodie, Superior, Wis., for appellee.

Before KNOCH, Senior Circuit Judge, and CASTLE and KILEY, Circuit Judges.

KNOCH, Senior Circuit Judge.

Plaintiff-appellee, Joseph E. Sayen, Jr., brought this action against the defendant-appellant, Edwin J. Rydzewski, and his insurer the defendant-appellant, Badger Mutual Insurance Company, to recover damages for personal injuries allegedly the result of negligent operation of his automobile by the defendant-appellant, Edwin J. Rydzewski.

There were a number of conflicts in the testimony concerning the incident out of which the action arose presenting some issues of credibility for the jury.

On Sunday afternoon, about 5:00 p. m., January 21, 1963, the plaintiff was driv-

ing his automobile west on United States Highway No. 2, east of Ashland, Wisconsin. At that point, the highway is straight, level, two-lane, asphalt, twenty feet wide, with about nine-foot wide gravel shoulders. It was still light, neither driver had turned on headlights. Plaintiff testified that the road was dry. Another witness said there was a thin layer of ice on the road.

Mr. Rydzewski was leaving the area of Johnson's tavern and filling station on the south side of Highway No. 2. Johnson's tavern has a semi-circular driveway with two exits. The evidence is in dispute as to whether Mr. Rydzewski left by the east or the west exit and as to whether or not he stopped before entering on the highway.

The plaintiff testified that Mr. Rydzewski drove out into his path forcing him onto the north shoulder against three mailbox posts. He said he saw an automobile later identified as the Rydzewski automobile, heading toward the west exit to the highway in a north, northwesterly direction, when he was about fifty feet east of the Johnson driveway, that he applied his own brakes, but, as the Rydzewski car came onto the highway in a north, northwesterly direction, to avoid hitting it, the plaintiff cut his own wheel to the right. As a result of the impact with the mailbox posts, plaintiff's chest struck his steering wheel and his head struck his car door. He became aware of pain in his shoulder and later in his back and right leg.

Mr. Rydzewski testified that he came to a complete stop at the east exit to the highway; saw the plaintiff's car to his right, five hundred to nine hundred feet off; proceeded onto the highway in low gear, making a left-hand turn to get onto the north half of the highway; crossed the center line, shifting into second gear; then stepped on the gas, straightened out, shifted to third gear, and accelerated going west. He said he was on the north half of the road for one hundred feet when he saw the plaintiff's car in his rear view mirror; he saw plaintiff start to pull onto the shoulder. He testified

that he recalled saying in a prior adverse examination that the plaintiff's car was about twenty feet behind him then. Plaintiff testified that after he stopped he saw the Rydzewski car slow down and then increase its speed and drive away. Mr. Rydzewski said that the last he saw of plaintiff's car the left front wheel was still on the highway, he heard no impact, accelerated and kept going.

The jurors' verdict indicates that they resolved the credibility issues in favor of the plaintiff. In their special verdict the jurors found that Mr. Rydzewski was causally negligent in the operation of his automobile at the time of the accident, that the plaintiff was also negligent but that his negligence was not a cause of the accident. They accordingly left blank the space for indicating percentages of causal negligence attributable to each party. They also found that plaintiff would be reasonably compensated for his damages by $1,158.56 for medical and hospital expense, $273 for damage to his automobile, $8,000 for loss of earning capacity to the time of trial, $25,000 for loss of earning capacity in the future, and $5,600 for personal injuries.

The defendants contend that it was error for the Trial Judge to deny the defendants' motion to change the answer of the jury from "no" to "yes" in response to the query whether the plaintiff's negligence was a cause of the accident. The jury in this case, unlike the juries in some of the cases on which the defendants rely, did not indicate in what respect the plaintiff was negligent or attribute any percentage of negligence to him. In discussing the cases, the parties assume, with good reason, that the jury thought plaintiff was negligent as to lookout. However, as the plaintiff points out, had the plaintiff seen the Rydzewski car from more than two hundred feet away, he would have seen only an automobile under control of its driver maneuvering in the parking lot of a rural tavern. There would have been no greater warning that the car about to enter onto the highway was not going to stop to allow the passage of the plaintiff who was on

the highway traveling at lawful speed. The defendants see an inherent inconsistency in the plaintiff's evidence in that he stated he reduced his speed from about 55 miles per hour to only 40 to 45 miles per hour (at the point where he left the road) after viewing the Rydzewski car approaching the west exit to the highway and applying his brakes. The defendants argue that this was a distance of two hundred feet, that plaintiff ought to have achieved greater reduction in speed if he had been going only 55 miles per hour and that the jury might have found the plaintiff negligent in driving at excessive speed. The defendants also contend that the jury might have found the plaintiff negligent in proper management and control of his vehicle. There is nothing to indicate that the jury did so find. There was considerable evidence of unobstructed view which makes it much more probable that the jury found the plaintiff negligent, as the District Judge stated, in maintaining lookout. The jury's findings had the Trial Court's approval. Maus v. Cook, 15 Wis.2d 203, 206, 112 N.W.2d 589 (1961), holds that our inquiry should be limited to ascertaining whether there is credible evidence that under any reasonable view supports the jury's findings.

■■ As the Trial Judge said in ruling on the motion to alter the verdict:

And the Court believes, as the Plaintiff suggests here, that the most plausible explanation would be a view on the part of the jury that Plaintiff Sayen may have been negligent as to lookout and that the Plaintiff should have become aware of Rydzewski's presence and movements at a point earlier in time than the Plaintiff did become aware of them, but that, accepting the Plaintiff's basic explana-

tion of the accident, the Plaintiff, even had he seen Rydzewski earlier, had a right to rely on Rydzewski's granting him the right of way.

As the defendants themselves assert, the test is whether such negligence as found was a substantial factor in producing the accident. Pfeifer v. Standard Gateway Theatre, Inc., 262 Wis. 229, 55 N.W.2d 29, 33 (1952). In the cases cited by the defendants, the negligence was a substantial factor in producing the accident.[1]

■ The defendants characterize as prejudicial error the admission of certain evidence. They see a violation of the hearsay rule in admission of evidence as to plaintiff's premature discharge from the U. S. Coast Guard on the ground of physical disability (with attendant receipt of lower pension, benefits, etc. than he might otherwise have earned). Plaintiff was allowed to testify over objection that he was given a 40% disability rating after examination by the Coast Guard Physical Evaluation Board and to introduce a letter sent him by the Commandant of the Coast Guard informing him of his enforced retirement on that ground. The defendants contend that they were improperly prevented from cross-examining the members of the Board or the Commandant as to the nature of any examination made by them, the sources of their information, etc. in arriving at the 40% figure. However, from the record it is clear that plaintiff never contended he suffered a 40% disability from this accident. His own physician testified to a 20% disability of which only 15% was attributed to the accident here involved. The evidence mentioned above was clearly introduced to show the early termination of plaintiff's Coast Guard career on the basis of

1. E. g. Conery v. Tackmaier, 34 Wis.2d 511, 149 N.W.2d 575 (1967); Oelke v. Earle, 271 Wis. 479, 74 N.W.2d 336, 339 (1956); Diersen v. Staven, 271 Wis. 519, 74 N.W.2d 158, 161 (1956); Merkle v. Behl, 269 Wis. 432, 69 N.W.2d 459 (1955); Bodden v. John H. Detter Coffee Co., 218 Wis. 451, 454, 261 N.W. 209 (1935); Peterson v. Simms, 189 Wis. 517, 519, 208 N.W. 264 (1926); Swartz v. Sommerfeldt, 272 Wis. 17, 74 N.W.2d 632 (1956); In Kuentzel v. State Farm Mutual Automobile Ins. Co., 12 Wis.2d 72, 106 N.W.2d 324, 328 (1960) the Trial Judge's order granting a new trial was upheld by the Wisconsin Supreme Court because the real controversy as to liability had not been fully and fairly tried.

physical disability, a fact which defendants evidently do not contest at this time.

The defendants also objected to allowing the plaintiff to testify respecting his income from civilian occupations which he pursued after his discharge on the ground that his books and records would have been better evidence of his income and that oral testimony was received in violation of the "best evidence rule." However, the plaintiff was not attempting to prove the contents of a written document, i. e. his books and records, of which the books and records would themselves have been the best evidence. He was testifying to the fact of his income from his own knowledge. Herzig v. Swift & Co., 2 Cir., 1945, 146 F.2d 444, 445–446. Courts do not bar oral proof of a matter merely because it is also provable by a writing. Allen v. W.H.O. Alfalfa Milling Co., 10 Cir., 1959, 272 F.2d 98, 100. As the Court there said, the written proof might have been more persuasive but the question is one of admissibility not weight, adding that if a litigant desires his adversary's books and records to be in evidence, he has ample means readily available under the Federal Rules of Civil Procedure. See also United States v. Alexander, 4 Cir., 1964, 326 F.2d 736, 739, where the Court said that it was now generally recognized that the "best evidence" phrase denotes only the rule of evidence which requires that the contents of an available written document be proved by introduction of the document itself.

The defendants consider it was erroneous to allow Patrick Thornton who was experienced in general contracting and who was also familiar with the plaintiff's work to testify as to the plaintiff's qualification by training, experience and ability as an electrician in the construction business. The defendants argue that this witness was not by reason of his own experience fit to testify as an expert on the qualifications of an electrician. The witness testified that he had been in the contracting business since 1935, that he had seen the plaintiff's work and that he had sought out the plaintiff in 1960 or 1961 for employment with his own organization having heard at that time that the plaintiff might be leaving the Coast Guard, although he stated, as the defendants note, that he had not been informed as to all the training and schooling which the plaintiff had; he said he did not need that information to form his opinion. We see no abuse of the Trial Court's discretion in allowing this witness to testify as to the plaintiff's qualifications prior to his accident for civilian employment as an electrician. Morrill v. Komasinski, 256 Wis. 417, 41 N.W.2d 620 (1949) rehearing denied.

We also disagree with the defendants on the score of Mr. Thornton's evidence as to pay rates in the plaintiff's area of residence, which the defendants consider to be mere hearsay. The witness said he knew of his own knowledge the approximate level within a few pennies. He stated, however, that he had also checked with two persons who had precise knowledge—giving their names and sources of information—after which he recited the precise scales down to the exact penny. We see no prejudicial error. The fact of Mr. Thornton's friendship for the plaintiff, which the defendants mention, was fully disclosed to the jury. He testified that he had come without subpoena because he was a friend of the plaintiff's and was asked to come and testify. See Widness v. Central States Fire Ins. Co., 259 Wis. 159, 47 N.W.2d 879 (1951).

Dr. Addison Aldrich, a Public Health Service physician, testified that he had examined the plaintiff a number of times over the years on behalf of the U. S. Coast Guard, that he had been seeing him since 1959, and had treated him for the injuries resulting from the accident here involved. A good deal of what the doctor said was mere corroboration of the plaintiff's own testimony concerning his past health, his medical history and the fact that examinations had been made for the Coast Guard. Dr. Aldrich referred from time to time to some typed notes which he turned over to the cross-

examiner. These notes were not his original hand-written notations but a typed copy made by his wife. He testified that he had compared this typed copy with the original and it seemed accurate. There were some obvious typographical errors, e. g. "February 30th." The defendants assert that the doctor was relying entirely on the typed notes and had no present recollections and that the original hand-written notations should have been produced for the cross-examiner. He may have been relying on the notes for details such as dates, but from his testimony as a whole, it does not appear that this was true with respect to the fact that the plaintiff had qualified for duty prior to the accident, the complaints made by the plaintiff, the doctor's own reference of plaintiff to an orthopedic surgeon, Dr. S. S. Houkom, who was also a witness at the trial. The defendants note that Dr. Aldrich was a personal friend of the plaintiff's as well as his treating physician. We see no error in the District Court's denial of the defendants' motion to strike Dr. Aldrich's testimony.

Prior to the trial, the plaintiff had been examined by the defendants' physician, Dr. William A. Klein, an orthopedic surgeon, who had submitted a written report indicating a permanent disability of 20%, which conformed to the findings of plaintiff's own physician.

About two weeks prior to the trial, defense counsel learned that Dr. Klein had a cardiac condition and probably would not be available to testify at the time of the trial should the defendants want to call him as a witness. Prior to trial, defense counsel learned that he was hospitalized.

■ In the unexplained absence of an available witness, the plaintiff could argue that the jury might infer that Dr. Klein's testimony would have been unfavorable to the defendants. Coney v. Milwaukee & Suburban Transport Co., 8 Wis.2d 520, 99 N.W.2d 713 (1959). Defendants wished to explain Dr. Klein's absence by submission of an affidavit. The plaintiff was satisfied with the affidavit in lieu of oral testimony of the hospital administrator but objected to admission of the explanation merely of Dr. Klein's absence without more. Plaintiff also indicated willingness to submit to examination by another physician who would testify.

The District Court resolved this difficulty by offering the defendants three choices:

1. Exclude explanation of Dr. Klein's absence and allow comment thereon.

2. Explain the absence and receive the report in evidence with a caution to the jury that the report must not be considered the equivalent of what Dr. Klein might testify to if present in the light of additional information on medical history made available at the trial etc., with plaintiff allowed to argue that had the doctor appeared his evidence would be unfavorable to the defendants and the defendants allowed to argue that had Dr. Klein appeared, with such additional information as might have been made available subsequent to his report, his testimony would not have been unfavorable to the defense.

3. Exclude explanation of Dr. Klein's absence, with no comment thereon by counsel, and arrange for a new medical examination of the plaintiff.

The District Judge noted in his comments when outlining these alternatives that neither before learning of the doctor's serious illness, nor since, had defense counsel consulted with him, in the ordinary course of preparing for the trial. There is nothing to indicate whether defendants would have called Dr. Klein as a witness had he been available, in view of his report.

The defense counsel felt that all three alternatives were prejudicial; referred to No. 3 as "buying a pig in a poke," said No. 2 would not be acceptable under any circumstances, and elected to follow No. 1 as the least detrimental. The forced choice is characterized as prejudicial error by the defendants. We disagree. We find no reversible error in

the District Court's disposition of this unusual problem.

On request of the plaintiff, the Court instructed the jury:

You are instructed that drivers of motor vehicles who are suddenly confronted by an emergency not brought about or contributed to by their own negligence, and who are compelled to act instantly to avoid collision or injury, are not guilty of negligence if they make such choice of action or inaction as an ordinarily prudent person might make, if placed in the same position, even though it should afterwards appear not to have been the best or safest course.

You will bear in mind, however, that the rule just stated does not apply to any person whose negligence wholly or in part created the emergency. One is not entitled to the benefit of the emergency rule unless he is without fault in the creation of the emergency.

The defendants rely on Geis v. Hirth, 32 Wis.2d 580, 146 N.W.2d 459 (1966) which sets out three basic requirements for the application of the emergency doctrine: the party seeking its benefits must be free of negligence contributing to the creation of the emergency, the time for action must be so short as to preclude deliberate and intelligent choice of action, and the element of negligence being inquired into must concern management and control. The defendants consider the plaintiff as causally negligent. They charge that his negligence as to lookout created the emergency making it error to give the instruction.

■ As the jury did not find plaintiff's negligence contributed to the accident, there is no inconsistency in their considering the emergency doctrine instruction and finding that plaintiff's negligence did not contribute to the creation of the emergency.

■ The defendants also assert prejudice through repetition in the instruc-

tions of the duty to yield to approaching vehicles as follows:

The statutes further provide that, "The operator of a vehicle entering a highway from a point of access other than another highway shall yield the right of way to all vehicles approaching on the highway which he is entering."

The law does not specifically require the operator of a motor vehicle to bring it to a stop before entering a highway such as Highway 2 from a driveway such as the Johnson tavern driveway. However, an operator of a motor vehicle entering the highway from the driveway is required to yield the right of way to a vehicle approaching on the highway.

whereas instructions on lookout, management and control, speed, etc. mentioned the duty only once. We see no prejudice in instructing on yielding the right of way and then explaining the absence of an obligation to stop, despite the fact that some words are repeated.

The defendants contend that there was no competent evidence of future pain and suffering to allow instructing the jurors that they might consider that an element in their award of damages. The defendants assert that Dr. Houkom testified to disability and future restriction of activity, but was not asked specifically about future pain. They further contend that these injuries were of a subjective character so that a layman could not deduce with reasonable certainty whether there would be future pain.

■ Aside from whether these injuries could be classified as subjective, Dr. Houkom did testify to complaints of pain at the time of his several examinations, which began almost one and one-half years after the accident, and were conducted before and after surgery. Dr. Houkom testified that the pain was induced by the strain on the soft tissue and that surgery would eliminate some of the pain.[2] He added that the plaintiff's

2. Dr. Houkom testified that he performed a laminectomy (spinal fusion or bone graft) involving the fourth lumbar vertebra, the fifth lumbar vertebra and the

condition would not improve further in the future. The instruction was justified by the evidence.

The judgment of the District Court is affirmed.

Affirmed.

fifth sacral, taking extra bone from the right ilium or thick part of the pelvic bone in the back; that the narrowing of the interspaces in the fifth lumbar and the first sacral vertebra pre-existed the injury in 1963. Thus he found that plaintiff suffered from a disability of 20% of the spine, 5% of which pre-existed the accident, which meant that the plaintiff would not be able to engage in work which involved considerable climbing, heavy lifting or general construction work.