MINERALS & CHEMICALS PHILIPP
CORPORATION, Plaintiff-Appellee,

v.

S. S. NATIONAL TRADER, her engines,
boilers, etc., and Ortegal Compania
Naviera S. A., Defendant-Appellant,

and

EXCELSIOR SHIPPING CO., Ltd.,
Defendant.

No. 772, Docket 33903.

United States Court of Appeals,
Second Circuit.

Argued June 8, 1971.

Decided July 13, 1971.

James H. Simonson, New York City
(Bigham, Euglar, Jones & Houston,
New York City), for plaintiff-appellee.

Edwin K. Reid, New York City (Zock,
Petrie, Sheneman & Reid, New York
City), for defendant-appellant.

Before FRIENDLY, Chief Judge, and
HAYS and OAKES, Circuit Judges.

PER CURIAM:

The principal issue here is factual:
whether the evidence supports the find-
ing by the court below that defendant
Ortegal's design, or negligent use and
repair of its port boiler, caused ignition
of oil fumes from the port settling tank
resulting in a fire which destroyed plain-
tiff's cargo. Defendant's principal con-
tention on appeal is that the only real
evidence of the cause of the fire rested
on hearsay statements, improperly ad-
mitted by the trial court, sitting without
a jury.

It is true that plaintiff's expert
Thompson, who examined the ship after
the fire, did in arriving at his con-
clusions read statements of certain crew
members, but he did so in lieu of reading
the log book which was destroyed by the
fire itself. His testimony as to the 27″
proximity of the port boiler and the
port' side settling tank was, however,
based on defendant's plan. He actually
saw after the fire that there was no
valve on the depth gauging device of
the port settler and no can at the end
of the valve. Defendant Ortegal's own
evidence was to the effect that the sec-
ond engineer had installed several
months before the fire a small pipe at
the 15 foot level of the settling tanks,

**832**

to keep a check on them. This pipe permitted oil to drain and drip out at the bottom of the pipe line. There was substantial evidence that vapors from fuel oil could accumulate in the area of the outlet of such a pipe which operated as an air vent. On internal examination, after the fire to be sure, Thompson also observed bowed or bulged brick work toward the center of the port boiler furnace. His opinion that this buckling was caused prior to the main fire rested on his not finding any "similar serious damage" to the various pipes, fittings and valves in the area of the boiler casing. He did state as one of the reasons for his opinion on the sequence of the buckling and the main fire that the heat in the 8-foot space between the boiler casing and the bulkhead was "practically unbearable," according to "one of the engineer's testimonies [sic]." But Thompson also stated that from his experience he was of the view that the external fire which is the subject of this litigation could not have caused the bowing of the brick work. On cross he testified that "the condition of the plating bore out the fact that it had been excessively overheated and buckled in that area." Thus, the conclusion was supported without reference to hearsay in the form of the "engineer's testimonies." Sayen v. Rydzewski, 387 F.2d 815, 819 (7th Cir. 1967); see 2 Wigmore, Evidence § 678 (3rd ed. 1940).

■■ The conclusions of Thompson were also corroborated and substantiated by other expert testimony of the witnesses Wright and Parker. By the very nature of a fire, its cause must often be proven through a combination of common sense, circumstantial evidence and expert testimony. United States v. Ebinger, 386 F.2d 557, 560 (2d Cir. 1967). See also Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960); The Slavers (Reindeer), 69 U.S. (2 Wall.) 383, 401, 17 L.Ed. 911 (1864) (when "positive proof

* * * is not generally to be expected, * * * the law allows a resort to circumstances * * *"); 7 Wigmore, Evidence § 1976 (3rd ed. 1940).

We cannot say as a matter of law that the trial court's findings here were based on insufficient evidence or were clearly erroneous. Rule 52(a), Fed.R.Civ.P.

Judgment affirmed.